589 P.2d 38

**James K. SMITH and Sally Cloe Smith, husband and wife, Appellants,**

v.

**Theodore C. HURLEY, Appellee.**

**No. 1 CA–CIV 3798.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 2, 1978.

Rehearing Denied Dec. 12, 1978.

Review Denied Jan. 9, 1979.

Murphy, Posner & Froimson by Michael J. LaVelle, K. Bellamy Brown, Phoenix, for appellants.

Law Offices of Donald D. Meyers by Clarke H. Greger, Donald D. Meyers, Phoenix, for appellee.

OPINION

JACOBSON, Presiding Judge.

The primary issue in this appeal is whether the obligor under a "buy out" agreement is relieved from performance because of the breach by the obligee of a contemporaneous partnership agreement.

This litigation was initiated by plaintiff-appellant, James K. Smith and Sally Cloe Smith, his wife (as James K. Smith is the primary responsible party, he shall hereinafter be referred to as Smith), against defendant-appellee Theodore C. Hurley (Hurley), seeking the dissolution of a partnership allegedly existing between Smith and Hurley and an accounting. This complaint was filed on August 28, 1973. Hurley answered, alleging that the partnership that existed between Smith and Hurley was terminated on September 1, 1972, and that a business known as Arizona Medical Plaza Pharmacy (Arizona Pharmacy), which Smith contended was a partnership asset, was his sole property. In addition, Hurley counterclaimed for the sum of $35,000 allegedly due from Smith under a "buy out" agreement.

On September 30, 1974, Smith filed an amended complaint, adding a count for rescission of the partnership and "buy out" agreements. The amended complaint was duly answered.

Subsequently, Smith filed a motion for partial summary judgment on his count for rescission, which was responded to by Hurley filing a motion for partial summary judgment in his favor on this same count. The trial court denied Smith's motion and granted Hurley's motion, dismissing Smith's rescission count.

Thereafter, Hurley moved for summary judgment on his counterclaim for $35,000, which was granted. The matter proceeded to a jury trial on the stipulated issue of whether the business known as Arizona Pharmacy was an asset of the partnership between the parties. The jury determined that Arizona Pharmacy and its underlying lease were partnership assets.

The remaining issues of accounting and division of property were then tried to the court. After trial, the court determined that the partnership existing between the parties was terminated on September 1, 1972; that Smith's interest in Arizona Pharmacy was $2,150; that the underlying lease on the Arizona Pharmacy business had no value; and that after offsetting certain amounts Smith owed Hurley, Smith was entitled to the sum of $634.68. On October 27, 1976, the court entered its formal judgment, awarding Smith $634.68 on his claim and awarding Hurley $35,000 on his counterclaim. Smith has appealed.

Before setting forth the facts in this matter, it should be noted that Smith does not contend that the accounting arising out of the Arizona Pharmacy transaction is improper. Instead, his basic contention on appeal is that the conduct of Hurley relieved him of his obligation to pay Hurley $35,000 under the "buy out" agreement, or alternatively, that Hurley's conduct justified a rescission of that agreement. Smith also contends that an offer of judgment made by Hurley during the course of this litigation and accepted by Smith precludes the judgment entered by the court.

The facts follow. In 1961, Hurley founded the business known as Bethany Medical Center Pharmacy (Bethany Pharmacy) in a building housing several doctors' offices. Smith began working for Hurley as a relief pharmacist at Bethany Pharmacy in 1968 or 1969. In May, 1971, the parties began discussions concerning the formation of a partnership between themselves. These negotiations resulted in two agreements executed by the parties on June 1, 1971.

The first of these documents was simply entitled "Agreement" (hereinafter referred to as the "buy out" agreement), which provided in substance that Smith would buy an undivided one-half interest in Bethany Pharmacy and accept an assignment of an undivided one-half interest in the lease on the premises where the pharmacy was located. The purchase price was $35,000 and the assets being purchased by Smith were described in the agreement as:

"an undivided ½ interest in and to the business currently conducted by Hurley at 2040 West Bethany Home Road, Phoenix, Arizona, and commonly referred to as Bethany Medical Center Pharmacy, including the receivables, fixtures, stock in trade, customer lists, furnishings and furniture located in and about the premises."

In addition, this agreement provided:

"That at any time within 2 years from the date hereof, Hurley may, at his option and election, sell the remaining ½ undivided interest in and to the assets and business of Bethany Medical Center Pharmacy to Smith for a purchase price of $35,000.00 and Smith agrees at the time Hurley exercises such option, he shall buy the remaining ½ of the assets and business at Bethany Medical Center Pharmacy and pay to Hurley the sum of $35,-000.00."

On the same date, the parties executed a second document, entitled "Partnership Agreement," whereby they agreed to become 50/50 partners operating under the partnership name of "Bethany Medical Center Pharmacy." The partnership agreement provided "that the parties may hereafter from time to time form other businesses to be conducted at other locations." In addition, the partnership was to be terminated if Hurley exercised his option to sell as provided in the "buy out" agreement.

Apparently, prior to the execution of these two agreements, some of the doctors who occupied the building housing the Bethany Pharmacy were discussing the possibility of purchasing land and building their own office structure. Both Smith and Hurley were parties to these discussions, but by June 1, 1971, the date of the execution of their agreements, there were no firm plans

for the size, nature, or location of the new building contemplated by the doctors. On July 5, 1971, however, Smith and Hurley borrowed $5,000 to purchase a share in a partnership known as M. D. Realty. M. D. Realty then purchased land upon which the Arizona Medical Plaza was eventually constructed. Subsequently, M. D. Realty acquired additional land. Hurley participated in this purchase, but Smith elected not to acquire an additional interest.

During the summer and fall of 1971, several meetings were held concerning the development of a medical building on the M. D. Realty property. In December, 1971, Hurley, using his own funds, paid $5,000 for an interest in the new building. Smith did not contribute to this acquisition.

On February 14, 1972, Hurley executed a lease for space in the new building to operate Arizona Pharmacy. The deposit on this lease was made by Hurley, Smith not participating. In addition, Hurley borrowed money in his own name to set up Arizona Pharmacy. Smith was not obligated on this loan.

In April, 1972, Hurley stopped working at Bethany Pharmacy, apparently because the income was insufficient to support both partners. In August, 1972, Hurley gave notice to Smith that he was exercising his option to sell the remaining one-half interest in Bethany Pharmacy and terminated the partnership agreement. Hurley began operating the new Arizona Pharmacy in October, 1972.

Smith later brought this action and sought a temporary restraining order to keep Hurley from disposing of Arizona Pharmacy. Apparently, the new Arizona Pharmacy was not a financial success and at the time this litigation arose, a sale of the business to Revco Drug Center was pending. After several court hearings, the parties stipulated on December 12, 1973, that Arizona Pharmacy could be sold to Revco with the proceeds of sale to be used to pay creditors and any excess to be held pending the outcome of the litigation.

Following the sale to Revco, early in April, 1974, Hurley moved to Colorado and obtained employment as a pharmacist with Gates Rubber Company.

Smith did not file his amended complaint for rescission until September 30, 1974.

On February 27, 1975, Hurley filed an Offer of Judgment allowing judgment to be taken against him for the sum of $7,000. On March 7, 1975, Smith accepted the offer and requested through the filing of a form of judgment that the entire litigation be dismissed, including Hurley's counterclaim upon which Hurley had previously obtained summary judgment. This was resisted by Hurley on the grounds that his offer went only to Smith's claim against him and not to his counterclaim against Smith. After a hearing, the court entered an order, finding:

"The court is of the opinion that the defendant's offer of judgment filed February 27, 1975 was conditionally accepted by the plaintiffs and that the minds of the parties have not met on the terms of the offer and acceptance and under the provisions of Rule 68, R.C.P., the offer has expired."

As previously indicated, Hurley's motion for summary judgment on his counterclaim under the "buy out" agreement for $35,000 was granted, and after a jury trial and accounting proceedings, Smith was awarded the sum of $624.68 on his claim.

Smith first contends that the trial court improperly granted summary judgment to Hurley on the $35,000 counterclaim. In this regard, Smith urges two contentions: (1) that Hurley's conduct in excluding Smith from the operation of Arizona Pharmacy resulted in Hurley having "unclean hands" which precluded him from enforcing the option provision of the June 1, 1971 "buy out" agreement; and (2) that the "buy out" agreement allowed Smith to acquire for $35,000, in addition to Bethany Pharmacy, the assets of Arizona Pharmacy which Hurley was unable to tender because of the sale to Revco. Smith does not urge that factual disputes existed which would preclude the entry of summary judgment.

We turn to Smith's second argument first. The basis of this contention is that the "buy out" agreement must be construed as covering all of the assets of the partnership, including future acquisitions. In our opinion, the agreements between the parties do not lend themselves to such a construction, even if, as contended by Smith, both agreements must be construed as an integrated document. *See Reber v. Chandler High School District*, 13 Ariz.App. 133, 474 P.2d 852 (1970).

It is clear from the terms of the "buy out" agreement that the subject matter of the sale and purchase was "the business *currently* conducted by Hurley at 2040 West Bethany Home Road," and the purchase price of an undivided one-half interest in that business was the sum of $35,000. This business was described in that agreement as the one "commonly referred to as Bethany Medical Center Pharmacy." This agreement further provided that Smith would be the sole owner of the "assets and business at Bethany Medical Center Pharmacy" upon Hurley exercising his option to sell and Smith paying an additional $35,000 for the remaining undivided one-half interest retained by Hurley. Construing this document alone, it is clear that the only thing being sold, and the only thing Smith could acquire full ownership in, was the business located at 2040 West Bethany Home Road.

While the partnership agreement designates "Bethany Medical Center Pharmacy" as the partnership name and provides that the partnership may form other businesses at other locations, this same agreement also recites that Hurley had sold a one-half interest in his former business conducted under the name of "Bethany Medical Center Pharmacy" to Smith. The partnership agreement further provides that:

"The capital of this partnership consists of the business and assets of Bethany Medical Center Pharmacy and has been contributed equally by the parties hereto as the result of an agreement entered into contemporaneously herewith whereby Smith purchased one half of the assets and business of Bethany Medical Center Pharmacy for a purchase price of $35,000."

This agreement goes on to provide that future capital contributions are to be equal.

If we construe the two agreements together, it is clear that the partnership agreement does not expand the assets being sold under the "buy out" agreement; rather it clarifies, if such clarification is necessary, that the capital of the partnership was limited to the subject matter of that contemporaneous buy and sell agreement.

■ Considering that this was the only asset in existence at the time of both agreements and that the partners would equally contribute to future capital, the trial court correctly held that what Smith was getting upon the exercise of the sell option was the business located at 2040 West Bethany Home Road, and not future acquisitions of the partnership.

Smith's other contention is based on the premise that Hurley's breach of the partnership agreement relieves Smith of his obligation to perform under the "buy out" agreement, by virtue of the doctrine of "unclean hands."

The basis of this contention is that the only action which will lie between partners is for an accounting. An accounting action sounds in equity, and since the doctrine of "unclean hands" is an equitable defense, the court improperly refused to apply the defense to Hurley's counterclaim.

■ The problem with this theory is its premise that the *only* action which will lie between partners is that of equitable accounting. It is the general rule that one partner cannot sue another partner at law, as distinguished from an action in equity, with respect to partnership transactions except after a full accounting and balance has been had. *Bohmfalk v. Vaughan*, 89 Ariz. 33, 357 P.2d 617 (1960). However, a recognized exception to this general rule is that one partner may sue another partner at law on transactions between them as individuals involving matters either never connected with the partnership business, or not so connected as to involve a partnership

accounting. *Clark v. Edris,* 120 Ariz. 244, 585 P.2d 264 (App.1978); *Clamp v. Nolan,* 300 S.W. 105 (Tex.Civ.App.1927); *Emerzian v. Emerzian,* 6 Cal.App.2d 721, 44 P.2d 656 (1935); Annot., Partnership—Actions Between Partners, 168 A.L.R. 1088, at 1106–1109 (1947).

■ The "buy out" agreement falls within this exception. The obligations created by that agreement were, as between the parties, individual obligations, not partnership responsibilities. The promise of Smith to pay $35,000 upon Hurley exercising his option came about not because he was a partner with Hurley, but because he individually promised to perform. Although the "buy out" agreement had set the stage for the creation of a partnership, it also contained the means for its termination. The issues arising under that agreement were wholly separate and apart from the conduct of the partnership business and thus could be settled, and relief granted, without regard to a partnership accounting.

Under these circumstances, the court could properly refuse to consider the equitable doctrine of "unclean hands" in granting Hurley relief on his counterclaim.

Smith next contends that the trial court improperly dismissed his count for rescission of the "buy out" agreement. The basis urged to the trial court for rescission was that at the time of the execution of the "buy out" and the partnership agreements, Hurley held an undisclosed intention not to allow Smith to participate in the new Arizona Pharmacy. Smith characterizes that conduct as constructive fraud arising because of the fiduciary relationship that exists between partners.

Assuming, for purposes of the motion for summary judgment, that Hurley entertained such an undisclosed intention, we nevertheless find the dismissal of the rescission count proper.

First, we have previously indicated that what Smith bought and Hurley sold was

Bethany Home Pharmacy alone, not future acquisitions of the partnership. The fraud which Smith claims may very well go to the validity of the partnership agreement, but we have grave doubts that it would affect the validity of the underlying "buy out" agreement.[1] Under that agreement, Hurley had the right, the day following its execution and prior to Arizona Pharmacy coming into existence, to exercise his option to sell. Certainly any fraud he may have entertained concerning Smith's participation in Arizona Pharmacy would not at that point operate as grounds for rescinding the "buy out" agreement.

Second, and more importantly, Smith had knowledge of the alleged fraud of Hurley in September of 1972, when Hurley refused to allow Smith to participate in the new business. Yet Smith did not seek rescission until September of 1974, approximately two years later. In the interim, Smith continued to operate Bethany Pharmacy and receive the profits therefrom. Smith allowed the sale of Arizona Pharmacy to take place and ascertained that it was in essence a no-profit operation. Hurley, based upon these happenings, had left the State of Arizona and taken employment in Colorado.

■ The general rule is that one seeking to rescind a contract of sale must do so within a reasonable time. *Mahurin v. Schmeck,* 95 Ariz. 333, 390 P.2d 576 (1964). Conversely, one who has knowledge of fraud as grounds for rescission, but continues to treat the property as his own is deemed to have waived the fraud, at least for purposes of rescission. *Grymes v. Sanders,* 93 U.S. 55, 23 L.Ed. 798 (1876).

■ Where Smith continued to reap the profits of his contract for two years following his knowledge of the fraud, the trial court, as a matter of law, properly determined that he had waived his right to rescind.

---

1. Although Smith's amended complaint sought rescission of both the "buy out" and the partnership agreements, since Smith has not appealed from the partnership accounting that took place in the trial court, we here consider only the propriety of the decision as to the "buy out" agreement.

■ Finally, Smith urges that the offer of judgment made by Hurley and accepted by Smith precludes the judgment entered here. The simple answer to this contention is that the parties never had a meeting of minds on the issue of offer of judgment, and hence Smith's "acceptance" was conditional and resulted in a rejection and a counter-offer which was never accepted by Hurley. Thus, the provisions of Rule 68, Rules of Civil Procedure never became operative.

The judgment of the trial court is affirmed.

OGG and SCHROEDER, JJ., concurring.