Dorothy PLAGENS, et al., Plaintiffs,

v.

NATIONAL RV HOLDINGS, INC., Ford Motor Company, and Evans Tempcon, Defendants.

No. 02–CV–1393.

United States District Court, D. Arizona.

March 30, 2004.

Marshall Meyers, Jack Gunn, Krohn & Moss Ltd., Phoenix, AZ, for Plaintiff.

William M. Shattuck, Esq, Scott Michael Deeny, Quarles & Brady Streich Lang LLP, Craig Aaron Logsdon, Linda L. Matson, Snell & Wilmer LLP, Edwin D Fleming, Esq, Burch & Cracchiolo PA, Phoenix, AZ, Jonathan Charles Corn, Perris, CA, Nathaniel R. Wolf, Mika Meyers Beckett & Jones PLC, Grand Rapids, MI, for Defendants.

## ORDER

TEILBORG, District Judge.

Pending before the Court is Defendant National RV Holdings, Inc.'s Motion for Summary Judgment (Doc. # 41) and supporting Statement of Facts (Doc. # 42).

Plaintiffs Dorothy and Stanley Plagens have filed a Response (Doc. # 47) and a Statement of Facts in Opposition (Doc. # 48). For the following reasons, the Court grants Defendant's Motion.

## I. Background

In July 2001, Plaintiffs purchased a 2001 National RV Dolphin motor home from 10,000 RV Sales, Inc., in San Diego, California. (Defendant's Statement of Facts "DSOF" at ¶ 1; Plaintiffs' Statement of Facts "PSOF" at ¶ 1.) Defendant was the final stage manufacturer of the motor home. (DSOF at ¶ 6.) As part of their purchase, Plaintiffs received Defendant's "Limited One Year/Three Year Warranty," which covers components and systems "fabricated, assembled, or installed by National RV, Inc." (DSOF at ¶¶ 7, 8; PSOF at ¶¶ 7, 8.) Plaintiffs allege that following their purchase, numerous defects in the motor home surfaced[1], which Defendant has failed to repair after several attempts. (Doc. # 28 (Complaint) at ¶¶ 10–13.) As a result, Plaintiffs sent Defendant a letter revoking acceptance of the motor home in June 2002. (PSOF at ¶ 26.) The following month Plaintiffs filed this action pursuant to the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(1), alleging that the defects and Defendant's failure to correct them constitute a breach of written and implied warranties and seeking revocation of acceptance of the motor home. Defendant now moves for summary judgment on each Plaintiffs' claims against it (Counts I–III).

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is mandated, "... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

---

1. Plaintiffs' Complaint alleges the following defects: (1) defective electrical system; (2) defective transmission; (3) defective gas filter tube; (4) defective air conditioning unit; (5) defective slide-out; (6) persistent leaning condition; (7) persistent water leak; (8) defective furnace/generator; (9) defective power seats; (10) defective refrigerator; (11) defective microwave; and (12) defective awning lock. (Complaint at ¶ 11.)

## III. Discussion

### A. *Overview of the MMWA*

Briefly stated, the MMWA creates minimum disclosure and content requirements for written consumer product warranties. Additionally, § 2310(d)(1) of the MMWA creates a private right of action authorizing a consumer to bring suit against a supplier or warrantor for failure "to comply with any obligation under . . . a written warranty, implied warranty, or service contract." In this case, Plaintiffs have asserted nine claims exclusively under the MMWA, three of which are against Defendant National RV. Counts One and Two, respectively, assert claims under MMWA § 2310(d)(1) for breach of written warranty and breach of implied warranty of merchantability. In Count Three, Plaintiffs seek a court order revoking their acceptance of the motor home as a form of equitable relief under § 2310(d)(1). (Complaint at ¶¶ 45–47.)

### B. *Applicable Law*

Defendant's central argument is that because the MMWA supplements, but does not supplant state warranty law, Arizona law bars Plaintiffs' claims. Specifically, Defendant contends Arizona law requires contractual privity to maintain a claim for breach of express or implied warranties under the U.C.C. Defendant claims that because no privity of contract exists between it and Plaintiffs, it is entitled to summary judgment.

In response, Plaintiffs argue that they are bringing their claims pursuant to the MMWA, as opposed to the U.C.C. or common law because the MMWA creates causes of action unavailable under the U.C.C. against remote manufacturers offering limited warranties. Essentially, Plaintiffs contend that Arizona law requiring contractual privity is inapplicable because, while the MMWA incorporates

U.C.C. and common law, its provisions preempt any inconsistent state law.

In support of its argument that state law controls, Defendant cites *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C.Cir.1986). There, in determining whether the MMWA affected the standard governing class certification in a class action, the court analyzed the interplay between MMWA's provisions and state warranty law. Specifically, the court held that, "[E]xcept in the specific instances in which Magnuson–Moss expressly prescribes a regulating rule, *the Act calls for the application of state written and implied warranty law*, not the creation of additional federal law." *Id.* at 1012 (emphasis added). The court went on to reject the argument that MMWA federalizes consumer warranty law so that a common question of law necessarily predominated over the case. Instead, the court reasoned that it was "beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson–Moss, in section [2310(d)] breach of warranty actions. *Id.* at 1013–14.

As to implied warranty claims, the court noted that § 2301(7) of the MMWA defined "implied warranty" by expressly referring to state law, as modified by §§ 2304(a) and 2308. Thus, the court concluded that "state law creates the warranty and also governs its dimensions, except as otherwise prescribed with particularity in Magnuson–Moss itself. The Federal prescriptions apply as written; where the Act states no prescription, state law continues in force." *Id.* at 1014.

The court reached the same conclusion with respect to written warranties. Initially, the court noted that unlike the definition of implied warranty, § 2301(7)'s definition of "written warranty" did not refer to state law. Based on this definition, the

court conceded that the argument that the MMWA federalized written warranty law had "surface plausibility." *Id.* at 1015. However, the court explained that by using the term "written warranty," as opposed to "express warranty" as provided by the U.C.C., Congress sought to exclude oral warranties which are included within the U.C.C.'s definition. Despite the change in terminology, the court reasoned:

> [I]f Congress intended displacement of state law beyond the Act's explicit prescriptions, one would expect to find a clear statement to that effect. Particularly in an area traditionally in the state's domain, such as sales law, the likelihood is that the national legislature, when it intervenes, and does not say otherwise, opts for the little rather than the much. We have no reason to believe Congress departed from that general pattern in this particular case.

*Id.*

 Accordingly, as *Walsh* makes clear, while the MMWA creates additional requirements for consumer product warranties and creates a private cause of action for breach of a warranty, "state warranty law lies at the base of all warranty claims under the [MMWA]." *Id.* at 1016. The court must therefore analyze whether Arizona law permits Plaintiffs' claims.[2]

### C. Breach of Warranty Claims

 Turning first to Plaintiffs' cause of action for breach of implied warranty, the court finds that Arizona law bars Plaintiffs' claim. As indicated above, § 2301(7) expressly defines implied warranty as one "arising under State law." Thus, Arizona's warranty law, including its

privity requirements, determines whether Plaintiffs' implied warranty claim is actionable. *See Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 247–48 (2d Cir.1986) (MMWA implied warranty claims subject to state law privity rules); *Walsh,* 807 F.2d at 1014 (under the terms of Magnuson–Moss, state law governs existence and basic meaning of implied warranties). Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty under the U.C.C. against a manufacturer.[3] *Flory v. Silvercrest Indus. Inc.,* 129 Ariz. 574, 633 P.2d 383, 387–89 (1981); *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851, 856 (1982) (citing *Flory*); *Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 638 P.2d 210, 215 (1981) (citing *Flory*). Thus, absent proof of contractual privity, Plaintiffs' claim is barred.

On this issue, Defendant proffers that it neither sold or contracted to sell the motor home to Plaintiffs and that Plaintiffs dealt exclusively with 10,000 RV Sales when making their purchase. (DSOF at ¶ 2.) Defendant further asserts that 10,000 RV is an independent motor home retailer. (DSOF at ¶ 4.) In support, Defendant points to ¶ 19.18 of its "Dealer Sales and Service Agreement" with 10,000 Rv Sales, which states:

> In all matters pertaining to Dealer's business, including warranty and service matters, Dealer is and shall be an independent contractor. Nothing in this Agreement shall be construed to create a franchise, partnership, joint venture or agency, and neither party shall be liable for the debts, obligations or responsibili-

---

**2.** Although Plaintiffs purchased the motor home in California, they accepted delivery of the motor home in Arizona, they reside in Arizona, and the alleged injuries occurred in Arizona. The Court will therefore apply Arizona law in this case.

**3.** The sale of a motor home is governed by Arizona's Uniform Commercial Code. *See Fousel v. Ted Walker Mobile Homes, Inc.,* 124 Ariz. 126, 602 P.2d 507, 510 (1979).

ties of the other. Dealer has no authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of National.

Based on these facts, Defendant asserts that there is no privity of contract between it and Plaintiffs. Plaintiffs have not presented any argument in their Response on this point. Thus, it is uncontested that no contractual privity exists between Plaintiffs and Defendant. Consequently, Plaintiffs cannot recover for breach of implied warranty of merchantability under the MMWA. *See Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1527–28 (D.D.C.1984) (finding that Arizona plaintiffs not in vertical privity with manufacturer could not pursue MMWA implied warranty claims or be counted toward meeting class requirement). Defendant is therefore entitled to summary judgment as a matter of law on Count Two.[4]

Likewise, citing *Flory* and *Seekings*, Defendant argues that Arizona's privity requirement bars Plaintiffs' claim for breach of written warranty. In both cases, the Arizona Supreme Court held that the lack of privity between a purchaser and a manufacturer precluded recovery based on express warranty under the U.C.C. *Flory*, 633 P.2d at 387; *Seekings*, 638 P.2d at 215; *see also, Rocky Mountain Fire & Cas. Co.*, 640 P.2d at 856.

In response, Plaintiffs contend that in *Flory* the court stated that the lack of privity did not preclude the purchaser from bringing a cause of action for breach of express warranty outside the U.C.C. 633 P.2d at 389; *see also Seekings*, 638 P.2d at 215 (citing *Flory* ). Specifically, the court noted that although the purchaser was un-

able to recover against the remote manufacturer under the U.C.C. because of lack of privity, the purchaser could assert a claim for breach of "contract of warranty." *Flory*, 633 P.2d at 389. Nevertheless, Defendant maintains that even construing Plaintiffs' breach of written warranty claim as being outside the U.C.C., the claim fails because: (1) the Limited Warranty excludes several of the alleged defects; (2) the alleged defects have been repaired; and (3) Plaintiffs have not given Defendant a reasonable opportunity to correct the allege defects as required by the MMWA.

### 1. Scope of Coverage

■ First, the parties dispute whether the Limited Warranty covers all of the alleged defects. The Limited Warranty provides in pertinent part:

**WARRANTY COVERAGE:** This warranty covers your motor home, which includes the structural components, plumbing, air-condition/heating, and electrical systems fabricated, assembled or installed by National RV. Inc, to be free under normal use from manufacturing defects in material or workmanship.

. . . . .

**ITEMS COVERED UNDER SEPARATE WARRANTIES:** Your motor home contains numerous appliances that are covered by their respective manufacturer warranties. Please refer to the individual owner's manuals provided at the time of delivery for all pertinent information. Items covered under separate warranties include but are not limited to: microwave, stove, furnace, refrig-

---

4. Plaintiffs also argue that privity of contract thwarts the MMWA's intent, is "an antiquated defense without modern day justification", and is against public policy. In light of the express language of the MMWA defining implied warranty according to state law terms,

and the continued viability of the privity requirement in Arizona, the Court rejects Plaintiffs' arguments. *See Abraham*, 795 F.2d at 249 (rejecting same arguments in light of MMWA's express language and legislative history).

erator, water heater, roof-mounted air-conditioner, etc.

**ITEMS NOT COVERED:** The following items are not covered by this warranty:

1. Chassis .components; drive train components, tires, portions of the automotive air-conditioning system, and batteries. These items are covered by the warranties of their respective manufacturers.

. . . . .

6. Costs to transport motor home to and from dealer or manufacturing plant location, loss of time, loss of use, towing charges, vehicle rental, telephone charges, lodging, fuel charges, commercial loss, or any other incidental or consequential damages.

8. Water leak damage: If determined that the damage resulted from an improper installation or defective material coverage will be for a term of one year from the date of original purchase. It is the responsibility of the owner to periodically inspect and reseal the unit is [sic] so required. Water leak damage caused by failure to maintain the integrity of the seals will not be covered under the warranty.

Defendant argues that the Limited Warranty does not cover the following alleged defects: (1) inoperative/defective air conditioning unit; (2) inoperative microwave; (3) inoperative refrigerator; (4) defective transmission; (5) persistent leaning condition; (6) persistent water leak; (7) defective generator; and (8) excessive generator oil consumption. In response, Plaintiffs contend that the Limited Warranty covers all components that Defendant "fabricated, assembled, or installed." Thus, they maintain that even if Defendant did not manufacture the defective components, it did install them, making Defendant responsible for the entire motor home.

Plaintiffs' interpretation of the Limited Warranty lacks support. The Limited Warranty is clearly labeled as a "*Limited One–Year/Three–Year Warranty*" and it contains plainly-labeled provisions excluding certain components from coverage. Particularly, the Limited Warranty expressly states that appliances are covered by their respective manufacturer warranties and enumerates the microwave, refrigerator, and roof-mounted air-conditioner as excepted from coverage. Thus, the Court finds that Plaintiffs' claims concerning the microwave, refrigerator, generator, and roof-mounted air-conditioning unit, all of which fall into the category of appliances, are excluded from coverage under the Limited Warranty.

Additionally, the Limited Warranty states that it does not cover "chassis components, drive train components, and portions of the automotive air-conditioning system." Instead, it explains that the respective manufacturer's warranty covers items falling into these categories. Defendant has submitted the signed affidavit of Roger Ferguson, Defendant's Vice President of Service and Warranty, who stated that the chassis components include the entire suspension, and thus the alleged defective leaning condition. (DSOF at ¶ 10, Ex. D.) Ferguson also stated that the chassis components and the dash air-conditioning unit were manufactured or supplied by Defendant Ford Motor Company, and are therefore only covered by Ford's warranty. (*Id.*) Accordingly, the Court finds that the allegedly defective transmission, which is part of the drive train, the persistent leaning condition, which is part of the chassis, and the dash air-conditioner are therefore excluded from coverage and cannot provide a basis for a breach of warranty claim.

With respect to the alleged water leak, the Limited Warranty covers water

leak damage for one year "[i]f determined that the damage resulted from an improper installation or defective material coverage." It excludes coverage if the damage was caused by a failure "to maintain the integrity of the seals." Plaintiffs have not submitted any evidence regarding the water leak. Defendant has submitted the inspection report from Steven Roddy indicating that there were no signs of water stains or damage, and indicating there were problems relating to the application of the sealant. This alleged defect is therefore excluded under the Limited Warranty.

█ Plaintiffs contend that the exclusions are invalid because they were not disclosed to them prior to making their purchase. However, as discussed above, the warranty is plainly entitled "Limited Warranty" and the exclusions are clearly set forth in the document. Moreover, Defendant provided the Limited Warranty to 10,000 RV Sales in compliance with 16 C.F.R. § 702.3. (DSOF at ¶ 7.) The Court therefore rejects Plaintiffs' arguments.

### 2. *Repaired Defects*

█ Next, Defendant asserts that of the defects covered by the Limited Warranty, the following four have been repaired: (1) headlights; (2) power seat; (3) the gas filter tube; and (4) the awning lock. In support, Defendant has submitted the deposition testimony of Mr. Plagens, who stated that the defects listed above had been repaired. (DSOF at ¶ 11.) Plaintiffs have not presented any evidence to controvert Mr. Plagens's testimony. Consequently, these defects cannot support Plaintiffs' breach of warranty claim.

### 3. *Reasonable Opportunity to Correct*

█ Section 2310(e) of the MMWA provides in pertinent part: "No action . . . may be brought under subsection (d) of this section for failure to comply with any

obligation under any written or implied warranty . . . unless the person obligated under the warranty . . : is afforded a reasonable opportunity to cure such failure to comply." Defendant argues that as to the remaining alleged defects—the cd player and the slide-out—any breach of warranty claim fails because Plaintiffs did not give it a reasonable opportunity to correct these defects. Specifically, Defendant cites to Mr. Plagens's testimony that Fritts' Ford replaced the CD player, but it subsequently became inoperative and they have not taken it in for service. (DSOF at ¶ 13.) Plaintiffs do not contest this evidence. With respect to the allegedly defective slide-out, Defendant alleges that Plaintiffs have failed to present evidence that they provided Defendant an opportunity to correct the problems. In response, Plaintiffs point to a repair order pertaining to the fuses in the slide out. (PSOF at ¶ 14.) However, they have not submitted any evidence showing that this work was done by Defendant. Thus, Plaintiffs have failed to present evidence creating an issue of fact as to whether Defendant had a reasonable opportunity to correct the remaining defects. Consequently, because none of the alleged defects can support a breach of warranty action, Defendant is entitled to summary judgment on Count One.

### D. *Revocation of Acceptance*

█ Because Plaintiffs have not succeeded on their breach of warranty claims, they are not entitled to damages or other equitable relief. Defendant is therefore entitled to summary judgment as a matter of law on Count Three of Plaintiffs' Complaint for revocation of acceptance.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment as to Counts

One, Two, and Three of Plaintiffs' Complaint is **GRANTED**.