**Richard BAILEY, Plaintiff,**

v.

**MONACO COACH CORPORATION, Defendant.**

**Civil Action File No. 1:04–CV–40–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

*Nov. 10, 2004.*

---

Plaintiff's own culpability for the litigation merits reducing the attorney's fees by half.

Eric Scott Fortas, Krohn & Moss, Atlanta, GA, Plaintiff.

Michael David Hostetter, Nall & Miller, Atlanta, GA, for Defendant.

## ORDER

THRASH, District Judge.

This is an action for breach of warranty. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 30], and the Plaintiff's Motion to Supplement his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [Doc. 40]. For the reasons set forth below, the Court GRANTS the Defendant's Motion for Summary Judgment and GRANTS the Plaintiff's Motion to Supplement his Memorandum of Law.

## I. BACKGROUND

On December 11, 2002, Plaintiff Richard Bailey purchased a Safari Sahara motorhome, manufactured by Defendant Monaco Coach Corporation, from a Florida dealership. When Bailey purchased the motorhome, he received a copy of the "Safari Motorhome Limited Warranty." The Limited Warranty states that it covers defects in the manufacture of the motorhome, and defects in the materials used to manufacture the motorhome. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) However, the Limited Warranty also includes several exclusions and limitations. The duration of the warranty is limited to the first 12 months or first 24,000 miles, whichever occurs first. (Id.) The warranty limits a consumer's remedy during this period to the repair or replacement of defective parts. (Id.) Additionally, the warranty states that the warrantor will not be liable for any consequential or incidental damages resulting from any defect in the motorhome. (Id.) Finally, in a section labeled "What the Warranty Does Not Cover," the warranty limits the scope of the repair or replacement remedy by expressly excluding certain items or problems. This section states, in relevant part, that:

> The Limited Warranty does not cover...items that are working as designed but which you are unhappy with because of the design; ...appliances and components covered by their own manufacturer's warranty including, by way of example the microwave, refrigerator... generator...hydraulic jacks...or flaking, peeling and chips or other defects or damage in or to the exterior or finish caused by rocks or other road hazards....

(Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.)

Shortly after taking possession of the motorhome, Bailey began to experience a series of problems with the vehicle. He alleges that his motorhome has required service for the following defects: electrical system, brakes, exterior trim, interior trim, water pump, luggage doors, rear bumper, body, tail pipe, entry door, backup camera, driver seat, passenger seat, screen door, radiator, closet doors, compartment doors, sewer hose door, cabinets, drawers, dinette slide-out, rotting wood, stress cracks, generator, marker lights, awning, shore power system, furnace, leveling system, air conditioning system, transmission oil cooler, and reverse lights. (Compl. ¶ 13.) In all, Bailey's motorhome has been serviced six times, for a total of 130 days out of service. (R. Bailey Aff. ¶ 3.)

Bailey alleges that he continues to suffer problems with his motorhome because Monaco Coach has failed to repair the numerous defects. Pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq., Bailey asserts claims for breach of express and implied warranty. Monaco Coach moves for summary judgment on these claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affi-

davits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

■ The Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, creates minimum disclosure and content requirements for certain consumer product warranties. Under the Act, consumers have a federal right of action against warrantors who fail "to comply with any obligation under ... a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d). The Act was intended to supplement, not supplant, state law. Therefore, unless the Act expressly prescribes a regulating rule, courts should apply state law to written and implied warranty claims made under the Act. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C.Cir.1986).

### A. *Breach of Express Warranty*

Congress enacted the Magnuson–Moss Warranty Act in order to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). The Act does not require manufacturers to provide warranties. But, if a manufacturer chooses to provide a written warranty, certain duties and liabilities are imposed on the warrantor. 16 C.F.R. § 700.3. One such duty relates to the content of written warranties. The Act requires that a written warranty must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a). The Act delegates the promulgation of specific disclosure requirements to the Federal Trade Commission. 15 U.S.C. § 2302(b)(1)(A).

The Federal Trade Commission regulations promulgated under the Act require warrantors to "clearly and conspicuously disclose [warranty terms] in a single document in simple and readily understood language." 16 C.F.R. § 701.3(a). In order to prevent consumer misunderstanding, the single document rule codified by the Federal Trade Commission specifies nine mandatory disclosures. Bailey argues that Monaco Coach's Limited Warranty does not satisfy these mandatory requirements. Specifically, Bailey contends that the Limited Warranty fails to make the following disclosures adequately:

(2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty; and ... (5) A step-by-step explanation of the procedure which the consumer should follow in order to obtain performance of any warranty obligation, including the persons or class of persons authorized to perform warranty obligations. This includes the name(s) of the warrantor(s), together with: the mailing address(es) of the warrantor(s), and/or the name or title and the address of any employee or department of the warrantor responsible

for the performance of warranty obligations, and/or a telephone number which consumers may use without charge to obtain information on warranty performance.

16 C.F.R. § 701.3(a).

██ Bailey asserts that the failure to comply with these requirements should void any exclusions and disclaimers included in the Limited Warranty. Thus, Bailey argues that the Limited Warranty should be deemed to cover every component within the motorhome. This argument fails for a number of reasons. Bailey has not cited any case to support the proposition that a failure to satisfy the disclosure requirements negates exclusions and disclaimers of the warranty. Moreover, violations of the Federal Trade Commission disclosure regulations would more properly form the basis of a claim for unfair or deceptive acts or practices under the Magnuson–Moss Act and the Federal Trade Commission Act. 15 U.S.C. §§ 45(a)(1), 2310(b); *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 620–21 (11th Cir.2001). Bailey, however, has failed to plead or prove any claim for deceptive trade practices.

██ Even if noncompliance would require a court to void a warranty's exclusions and disclaimers, Monaco Coach's Limited Warranty does not violate the Federal Trade Commission requirements. The Limited Warranty states that it "covers defects in the manufacture of your motorhome and defects in materials used to manufacture your motorhome." (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Based on this language, Bailey argues that the warranty does not give a clear description of the products covered by or excluded from the warranty. *See* 16 C.F.R. § 701.3(a)(2). He contends that this statement leads a consumer to believe that the entire motorhome is covered under the warranty. However, the rule of contract construction requires courts to read provisions of a contract harmoniously in order to give effect to all portions. *City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.2000). In doing so, "one part of an agreement may be resorted to for the explanation of the meaning of the language of another part." *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1247 (11th Cir.2002). Thus, even construing any potential ambiguities in the warranty against Monaco Coach, Bailey's interpretation of the scope of the warranty lacks merit.

First, the warranty is clearly labeled as a "Safari Motorhome *Limited* Warranty." This label should alert a reasonable consumer to the fact that portions of the motorhome will not be covered by the warranty. *See Plagens v. National RV Holdings*, 328 F.Supp.2d 1068, 1075 (D.Ariz.2004). Furthermore, the second sentence of the section describing coverage explicitly directs the consumer to look to the section titled "What the Warranty Does Not Cover." This section clarifies the scope of warranty coverage by setting forth an extensive list of items and problems that are excluded from coverage, including the automotive chassis and power train, appliances and components covered by other manufacturers' warranties, and defects or damage caused by road hazards. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Despite this description of exclusions, Bailey maintains that the warranty fails to clearly describe those things included under the warranty because it does not list each appliance or component excluded from coverage. However, it is sufficient that Monaco Coach's Limited Warranty defines the categories of items excluded under the warranty. Requiring a warrantor to set forth an exhaustive list, from bumper to bumper, of

every included and excluded item would prove unduly burdensome and unnecessary for a clear description of the scope of warranty coverage. Moreover, the fact that Monaco Coach chose to include examples of items contained within the enunciated categories of excluded items tends to clarify, rather than confuse, the scope of the warranty. Thus, Monaco Coach's Limited Warranty gives a clear description of the items covered by the warranty and does not fail to meet the requirements of section 701.3(a)(2).

■ Bailey also argues that the Limited Warranty does not provide a step-by-step explanation of how to obtain performance under the warranty because it does not list every warrantor for every part, including excluded parts, contained within the motorhome. See 16 C.F.R. § 701.3(a)(5). Bailey's argument, however, is not supported by the text of the regulation. The plain language of the regulation requires the inclusion of the name and contact information for the warrantor or warrantors responsible for providing coverage under that specific warranty. There is not a requirement that information pertaining to warrantors of excluded parts also be included. Monaco Coach makes clear that it is the warrantor of those items not excluded by the Limited Warranty. Furthermore, in the event that a consumer has questions regarding warranty service, the warranty sets forth a telephone number and mailing address for Monaco Coach's Warranty Department. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Accordingly, Monaco Coach has complied with the requirements of section 701.3(a)(5).

■ Accordingly, Bailey's breach of express warranty claim depends on whether Monaco Coach failed to comply with the Limited Warranty as written. Under the Magnuson–Moss Act, a warrantor must specify whether a written warranty is a full or limited warranty. 15 U.S.C. § 2303(a). Only full warranties are required to meet the minimum standards set forth in 15 U.S.C. § 2304. *See Razor v. Hyundai Motor America*, 349 Ill.App.3d 651, 286 Ill.Dec. 190, 813 N.E.2d 247, 258 (2004); *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill.App.3d 313, 242 Ill.Dec. 738, 722 N.E.2d 227, 235 (1999). Therefore, because the law relating to limited warranties is not expressly modified, limited warranties, such as Monaco Coach's, are not governed by Magnuson–Moss but by the Uniform Commercial Code. *See Walsh*, 807 F.2d at 1016 (unless expressly modified by Magnuson–Moss, state warranty law applies to all breach of warranty claims brought under the Act); *Royal Lincoln–Mercury Sales, Inc. v. Wallace*, 415 So.2d 1024, 1026–27 (Miss.1982) ("The elements of proof [for breach of warranty] are the same whether the claim is made under the [Magnuson–Moss] act or under state law.").

[6] A federal court must apply the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *In re Tri–State Crematory Litigation*, 215 F.R.D. 660, 677 (N.D.Ga.2003). In contract actions, Georgia recognizes the rule of *lex loci contractus*. Under this rule, a court should apply the law of the state where the contract was made or performed to govern issues of validity or interpretation. *See In re Tri–State Crematory Litigation*, 215 F.R.D. at 677; *Southern Guar. Ins. Co. v. Central Mut. Ins. Co.*, 214 Ga.App. 662, 662, 449 S.E.2d 3 (1994). Bailey negotiated and executed the sales contract, which included the Limited Warranty, in Florida. Thus, Florida's version of the Uniform Commercial Code applies to Bailey's written warranty claim.

■ Under Florida law, a warrantor is permitted to limit the remedies under a warranty to the repair or replacement of defective parts. Fla. Stat. Ann. § 672.719(1)(a). However, if the repair-or-replace limited warranty fails of its essential purpose, the consumer may seek to recover any remedy provided by Florida law. Fla. Stat. Ann. § 672.719(2). A repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts. *See Typographical Service, Inc. v. Itek Corp.,* 721 F.2d 1317, 1320 (11th Cir.1983); *Lennar Homes, Inc. v. Masonite Corp.,* 32 F.Supp.2d 396, 401 (E.D.La. 1998) (applying Florida law); *cf.* 15 U.S.C. § 2304(a)(4) (Magnuson–Moss Act requires that a warrantor be given a reasonable number of attempts to remedy a defect). Therefore, in order to establish that a warrantor breached a repair-or-replace limited warranty, a plaintiff must prove that: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given to the warrantor within a reasonable time after the defect was or should have been discovered; and (3) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts. *See* Fla. Stat. Ann. § 672.607(3)(a); *Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1103 (11th Cir.1983) (under Florida law, a breach of express warranty occurs only if goods are defective upon delivery); *General Matters, Inc. v. Paramount Canning Co.,* 382 So.2d 1262, 1263–64 (Fla.Dist.Ct.App.1980) (notification of defect is a "valid precondition of imposing liability on a seller of goods"); *cf.* 15 U.S.C. § 2304(b)(1) (Magnuson–Moss Act permits warrantor to impose duty of notification upon consumer).

■ Monaco Coach's Limited Warranty states that consumers are entitled to the repair or replacement of items covered under the warranty. The warranty expounds on Florida's notice requirement by specifying what constitutes reasonable notice. In order for a defect to be covered by the warranty, the consumer must notify Monaco Coach, or an authorized servicing dealer, of the defect within the warranty coverage period and within five days of discovering the defect. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) As a result of the requirements imposed by Florida law, supplemented by the terms of the Limited Warranty, Bailey cannot establish that Monaco Coach breached its written limited warranty for the following reasons: (1) a number of the alleged defects were expressly excluded by the terms of the warranty; (2) the majority of the defects were repaired; (3) Monaco Coach did not receive reasonable notice of several defects; and (4) Bailey did not provide sufficient evidence to establish that certain problems constituted defects.

Monaco Coach asserts that the alleged defects involving the following items are not covered under the Limited Warranty: the microwave, the refrigerator, the generator, and the hydraulic jacks/leveling system. The Limited Warranty expressly excludes these items from coverage. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Monaco Coach also maintains that any alleged defect in the awning is excluded under the warranty terms. Bailey does not allege that the awning has failed to work as designed. Rather, he does not approve of the design because he believes the awning is too short. (R. Bailey Dep. at 45.) The warranty, however, does not cover "items that are working as designed but which you are unhappy with because of the design." (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Bailey cannot estab-

lish a breach of written warranty claim based on these excluded items.

 By offering a warranty, a manufacturer recognizes that items, even those found in a new product, may sometimes fail. A warranty itself is not breached simply because a defect occurs. *See Lennar Homes, Inc.*, 32 F.Supp.2d at 404. Pursuant to Florida law, a repair-or-replace warranty is breached only if the warrantor does not remedy the covered defects within a reasonable time. Thus, any defects that were brought to the attention of and repaired by Monaco Coach in a reasonable number of attempts cannot form the basis of Bailey's breach of written warranty claim.

Bailey testified that Monaco Coach repaired the following alleged defects: the screen door (R. Bailey Dep. at 30); the microwave trim (*id.* at 41); the refrigerator (*id.* at 42); the door over the head of the bed (*id.* at 42); the exterior paint job (*id.* at 42–43); the leaking compartment door (*id.* at 43–44); the rotting wood around the exterior lights (*id.* at 44–45); the stress crack (*id.* at 51); the sewer hose (*id.* at 52); the generator remote switch lights (*id.* at 53–54); the mirrored closet door (*id.* at 54); the running and marker lights (*id.* at 54); the cabinet doors (*id.* at 57); the cabinet drawers (*id.*); the backup camera falling into the dash (*id.* at 58); the air conditioning (*id.*); the screws missing from the rearview mirror (*id.* at 59); the loose bedroom wall lamp (*id.*); the front seats and front compartment (*id.* at 68); and the entry steps (*id.* at 70). In response to Monaco Coach's Request for Admissions, Bailey also admitted that the following items were not currently defective: the exterior trim, the interior trim, the rear bumper, the body, the tail pipe, the

entry door, the radiator, the reverse lights, the sewer hose door, the cabinets, the drawers, the wood in the vehicle, the generator, and the shore power system. (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 6.)[1] Additionally, Bailey alleges that the rear furnace is defective, but he concedes that the motorhome does not have a rear furnace. (R. Bailey Dep. at 57.) Bailey cannot state a cause of action for breach of written warranty based on these repaired defects.

The only remaining defects that Bailey has not admitted have been repaired are a defective backup camera, defective water pump, squealing brakes, defective dinette slide-out, defective dining room table, and defective luggage doors. Bailey noticed during his first drive that the backup camera was not functioning properly because the screen was blank. Monaco Coach corrected this problem, but the camera began reversing images. Although he testified that this problem has also been repaired, Bailey contends that the camera works intermittently because it will blank out for one or two seconds. (R. Bailey Dep. at 29–30.) However, in letters sent to Monaco Coach on June 16, 2003, July 30, 2003, and August 19, 2003, Bailey indicated that the backup camera had been repaired. (*Id.* at 78–80, Ex. 13.) Therefore, even assuming the camera is defective, Bailey failed to give Monaco Coach reasonable notice of the remaining defect.

The original water pump was replaced shortly after Bailey purchased the motorhome. According to Bailey, however, the water pump is still defective because it works intermittently. (R. Bailey Dep. at 25.) Although Bailey noticed almost immediately that the new pump was working

---

1. Bailey stated that these were qualified admissions. In essence, however, he admitted that each item was not currently defective by conceding that he did not notice any problem with these items. Thus, the Court will deem these to be admissions.

intermittently, he did not report the problem during the motorhome's next service. (*Id.* at 25, 27.) Rather, he waited until July 2003, approximately six months later, to notify Monaco Coach of the alleged defect. (*Id.*, Ex. 6.) Because Bailey failed to report the defect within a reasonable time of discovering the problem, he cannot support a claim for breach of the Limited Warranty. But, even if this notification had been timely, there is insufficient evidence to establish a continuing defect. The repair facility was not able to duplicate the problem or identify a defect. (*Id.*) Nor did Bailey seem to consider the water pump to be defective. As with the backup camera, each of Bailey's three letters to Monaco Coach reported that the water pump had been repaired. (*Id.* at 78–80, Ex. 13.) Because Monaco Coach was not given the appropriate notice of the alleged defects or was informed that the problems had been resolved, Monaco Coach did not breach the Limited Warranty with regard to the backup camera and water pump.

Bailey alleges that his brakes are defective because they squeal. (R. Bailey Dep. at 39; K. Bailey Dep. at 6.) Bailey's expert witness expressed no opinion as to whether this noisy brake system constitutes a defect. (Trimmell Dep., Vol. II, at 69.) Consequently, Monaco Coach argues that Bailey has failed to present sufficient evidence to establish that the brakes are defective. Although a plaintiff should not be required to prove the specific cause of a defect, there must be sufficient proof to establish that the alleged problem is truly a defect in the manufacture or materials used to manufacture the motorhome. As a general rule, expert testimony is not required to establish a defect if that defect is one that can be understood by the reasonable juror. *See Teerling v. Fleetwood Motor Homes of Indiana, Inc.*, No. 99 C 5926, 2001 WL 641337, at *4 (N.D.Ill. June 4, 2001). Therefore, the nature of the al-

leged defect will dictate whether a plaintiff needs expert testimony. *Id.* Here, the proper functioning of a motorhome brake system is not within the reasonable purview of the average layperson and, therefore, requires expert testimony. The testimony of Bailey's expert, William Trimmell, supports this conclusion. He testified that he could not form an opinion as to whether the squealing was indicative of a defect until he conducted an inspection, knew how Bailey treated his brakes, and knew the level of wear on the brakes. (Trimmell Dep., Vol. II, at 68–69.) Thus, even assuming that the brakes squeal, there is insufficient evidence to establish a defect.

Nonetheless, Bailey argues that a safety recall of the brakes constitutes direct evidence of the existence of a defect. However, "a manufacturer recall does not admit a defect in a particular product, but refers to the possibility of a defect in a class of products." *Bagel v. American Honda Motor Co., Inc.*, 132 Ill.App.3d 82, 87 Ill.Dec. 453, 477 N.E.2d 54, 58 (1985). The 2002 Safari Sahara motorhome brakes were recalled because of a potential overheating defect. (Pl.'s Mot. to Supplement His Mem. of Law, Ex. A.) But, this recall notice alone is irrelevant without independent proof that Bailey's brakes suffer from the same defect. *See, e.g., Harley–Davidson Motor Co., Inc. v. Daniel*, 244 Ga. 284, 287, 260 S.E.2d 20 (1979); *Harley–Davidson Motor Co., Inc. v. Carpenter*, 350 So.2d 360, 361 (Fla.Dist.Ct.App.1977); *Manieri v. Volkswagenwerk A.G.*, 151 N.J.Super. 422, 376 A.2d 1317, 1323 (1977). Bailey has not presented any evidence that his brakes suffer from the overheating defect nor how an overheating problem relates to the alleged defect in his particular brakes. Thus, the recall notice is insufficient to create a triable issue regarding the existence of a defect.

However, even if Bailey could establish that his brakes are defective, he has failed to establish that Monaco Coach breached the Limited Warranty. According to the service reports, Bailey reported squealing brakes on two occasions, March 2003 and July 2003. (Trimmell Dep., Vol. II, Ex.17.) During March, the service center tested the brakes and did not find a problem. (*Id.*) In July, another service center verified the squealing and corrected the problem by removing and replacing the front brake pads, rotors, and calipers. (*Id.*) While Bailey maintains that the brakes continue to squeal, there is no evidence that this problem was reported to Monaco Coach. Additionally, as with the water pump and backup camera, Bailey's July 30 and August 19, 2003, letters to Monaco Coach stated that the brakes had been repaired. (R. Bailey Dep., Ex. 13.) Therefore, Bailey cannot base his breach of written warranty claim on the brakes.

Bailey contends that his defective dinette slide-out has not been adequately repaired by Monaco Coach. The service records indicate that Bailey complained in July 2003 that the dinette slide-out was retracting too slowly. (R. Bailey Dep., Ex. 6.) The slow retraction was apparently corrected as there is no mention in the repair history of that problem after the July service. In October 2003 and March 2004, Bailey complained about the slide-out alignment, stating that a small gap was left when the slide-out was closed. (*Id.* at 53, 63–64, Ex. 7.) He asserts that this alignment problem was never repaired. (*Id.* at 63–64.) Because Bailey's expert did not examine the slide-out or offer any opinion as to whether the alignment problem constitutes a defect, Monaco Coach argues that Bailey has not introduced sufficient

evidence of a defect. The average juror likely has little knowledge of or experience with motorhome slide-outs and, therefore, would be unlikely to know whether a small alignment gap is a manufacturing or installation defect. Therefore, absent expert testimony concerning such things as the proper functioning of motorhome slide-outs or industry standards for slide-out alignment, a defect in the slide-out cannot be inferred from the presence of a small gap. Thus, Bailey has not established that the dinette slide-out is defective.

According to Bailey, the dining room table is defective because it slides while the motorhome is in transit. However, he did not complain about the table until November 2003. (Pl.'s Controverting Statement of Facts, Ex. D.) He has testified that the service dealer "corrected it as much as they possibly could" by replacing the latch. (R. Bailey Dep. at 66.) Bailey did not have a problem with the dining room table sliding in transit until nearly 11 months after he purchased the motorhome and after driving it for more than 10,000 miles. Monaco Coach argues, therefore, that the alleged defect did not exist at the time of sale. Bailey has presented no evidence to establish that the dining room table or the latch holding the table in place was, in fact, defective when he purchased the motorhome. Therefore, absent proof of this essential element, Bailey cannot establish a claim of breach of written warranty. *See Royal Typewriter Co.*, 719 F.2d at 1103; *see also Holcomb v. Cessna Aircraft Co.*, 439 F.2d 1150, 1155 (5th Cir. 1971) [2] (plaintiff failed to prove engine was defective at time of sale when no defect was revealed until after 30,000 air miles); *Ford Motor Co. v. General Accident Ins. Co.*, 365 Md. 321, 779 A.2d 362, 369 (2001)

---

**2.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

("It is undoubtedly the settled law that to recover on an express warranty the burden of proof is on the plaintiff to establish that the article sold did not at the time of the sale conform to the representations of the warranty.").

Finally, Bailey asserts that the luggage doors of his motorhome are defective. However, he has failed to present any evidence that this alleged defect was ever reported to Monaco Coach or any authorized service center. The only mention of luggage doors in any service report is contained in the repair estimate given by Palmetto Collision Center. (Trimmell Dep., Vol. II, Ex. 17.) There is no evidence that Palmetto Collision Center is an authorized service center. Furthermore, Bailey testified that Palmetto Collision Center repaired the motorhome after debris from the road damaged portions of the driver's side compartment doors. (R. Bailey Dep. at 35.) The Limited Warranty expressly excludes "defects or damage in or to the exterior or finish caused by rocks or other road hazards." (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 5.) Therefore, the defective luggage doors would have been excluded from warranty coverage even if Monaco Coach had been notified of the defect.

Bailey has not presented evidence to suggest that Monaco Coach failed to repair any defect that was appropriately brought to its attention and not excluded by the terms of the Limited Warranty. Therefore, Bailey cannot establish a breach of written warranty, and summary judgment for Monaco Coach is warranted.

### B. *Breach of Implied Warranty*

Bailey also alleges that Monaco Coach breached the implied warranty of merchantability because the motorhome is of insufficient quality and not fit for its ordinary purpose. The Magnuson–Moss Act gives consumers a private right of action against warrantors for breach of implied warranty. 15 U.S.C. § 2301(7). However, Congress expressly provided that implied warranty claims under the Act arise out of and are defined by state law. *Id.* Therefore, Bailey's implied warranty claim will also be governed by Florida law.

Monaco Coach argues that Bailey's implied warranty claim fails because the parties lack privity of contract. It is undisputed that the parties are not in privity because Bailey did not purchase the motorhome directly from Monaco Coach. Under Florida law, privity of contract is a prerequisite to maintaining a claim for breach of implied warranty. *Baker v. Danek Medical,* 35 F.Supp.2d 875, 878 (N.D.Fla.1998); *Kramer v. Piper Aircraft Corp.,* 520 So.2d 37, 38 (Fla.1988). However, Bailey argues that privity should be inferred from the fact that Monaco Coach extended him a written warranty. He relies entirely on the decision of an Illinois state court in support of this argument. *See Szajna v. General Motors Corp.,* 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760 (1986). In *Szajna,* the Illinois Supreme Court expressly reaffirmed the privity requirement under Illinois law. *Szajna,* 503 N.E.2d at 767. But, the court went on to expand the traditional definition of privity by holding that, for the purposes of Magnuson–Moss Act, privity could be implied if the manufacturer provides the consumer with a written warranty. *Id.* at 769. Although Bailey urges the Court to adopt the nonbinding interpretation of an Illinois court, it is significant to note that even district courts in Illinois have "overwhelmingly rejected the *Szajna* approach" as an improper interpretation of federal law. *Smith v. Monaco Coach Corp.,* 334 F.Supp.2d 1065, 1069 (N.D.Ill. 2004); *see also Finch v. Ford Motor Co.,* 327 F.Supp.2d 942, 945–46 (N.D.Ill.2004);

*Hamdan v. Land Rover North America, Inc.,* No. 03 C 2051, 2003 WL 21911244, at *2 (N.D.Ill. Aug.8, 2003); *Kutzler v. Thor Industries Inc.,* No. 03 C 2389, 2003 WL 21654260, at *6 (N.D.Ill. July 14, 2003). This Court, likewise, rejects the holding of *Szajna.*

 Neither the statutory language nor the legislative history of the Act indicates that Congress intended to modify or supplant state law with regard to privity in the case of implied warranties. *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 249 (2nd Cir.1986); *see also Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 525 (7th Cir.2003) ("[W]hether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act therefore hinges entirely on the applicable state law."). Rather, the Act incorporates Congress's intent to extend implied warranties only to those protected by traditional state law. Accordingly, most courts continue to rely exclusively on state privity requirements when interpreting Magnuson–Moss Act implied warranty claims. *See, e.g., Plagens,* 328 F.Supp.2d at 1073; *Pack v. Damon Corp.,* 320 F.Supp.2d 545, 561 (E.D.Mich.2004) ("[A]n express warranty running directly from a manufacturer to a buyer does not create contractual privity....."); *Walsh v. Ford Motor Co.,* Civ. A. No. 81–1998, 1987 WL 17667, at *1 (D.D.C. Sept.21, 1987) (applying Florida law). Similarly, this Court will apply Florida's traditional privity requirement. Because the parties lack privity of contract, Bailey's claim of breach of implied warranty fails as a matter of law, and summary judgment for Monaco Coach is proper.

## C. *Revocation of Acceptance*

Monaco Coach moves for summary judgment on the issue of revocation of acceptance. However, Bailey did not assert a claim for revocation of acceptance in his complaint nor did he make a prayer for this form of equitable relief. Therefore, the Court declines to address the merits of the alleged revocation of acceptance.

## D. *Incidental and Consequential Damages*

The parties dispute whether Bailey would be entitled to recover consequential and incidental damages based on the terms of the Limited Warranty. However, as summary judgment has been granted in favor of Monaco Coach on all substantive claims, any issue regarding damages is moot.

## IV. *CONCLUSION*

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 30] is GRANTED, and the Plaintiff's Motion to Supplement his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [Doc. 40] is GRANTED.

SO ORDERED, this 10 day of November, 2004.