602 P.2d 507

**Delbert FOUSEL and Jean E. Fousel, husband and wife, Plaintiffs/Appellees,**

v.

**TED WALKER MOBILE HOMES, INC., Defendant/Appellant.**

**No. 2 CA–CIV 3248.**

Court of Appeals of Arizona, Division 2.

Oct. 5, 1979.

Ronald J. Newman, Tucson, for defendant/appellant.

Chandler, Tuller, Udall & Redhair, by Robert E. Lundquist, Tucson, for plaintiffs/appellees.

## OPINION

HATHAWAY, Judge.

■ This is an appeal from an award of punitive damages to appellees, plaintiffs below, in a fraud and breach of contract action. The sole issue on appeal is whether the trial court, sitting without a jury properly awarded punitive damages as part of its judgment for plaintiffs where plaintiffs had elected to sue for rescission of the contract between the parties. The judgment cancelled the contract of sale, ordered the refund of the purchase price, and awarded $2,705.26 in consequential damages and $10,000 in punitive damages. We believe the punitive damages award was proper and affirm.

The facts necessary to dispose of this matter considered in the light most favorable to support the judgment are as follows:

1. In January 1977, the Fousels entered into a contract with Ted Walker Mobile Homes, Inc., (hereinafter Walker) for the purchase of a "Coronado" model mobile home manufactured by United Mobile Homes, Inc., (hereinafter United).

2. At the time of entering into the purchase agreement with Walker, the Fousels were not aware of the fact that United had cancelled its manufacturer-dealer relationship with Walker and had terminated all authority of Walker to sell its mobile homes.

3. At all times material to this action, Walker held itself out to the Fousels as an authorized United dealer and actively concealed from them the fact that its prior authorization to sell United mobile homes had been terminated prior to November 1976.

4. Because Walker could not order the mobile home directly from United, it entered into a separate agreement with an

authorized United dealer by the terms of which the authorized dealer would order the home from United at a cost to Walker of $1,000 over the factory delivered price.

5. The mobile home ordered by Walker and shipped by United materially differed from the one ordered and contracted for by the Fousels. These material differences were the result of Walker's failure to communicate accurately to the second dealer the specifications desired by the Fousels.

6. The Fousels inspected the home at Walker's dealership during the first week in March and provided Walker with a written list of the deficiencies requiring correction.

7. Walker induced the Fousels to accept the home and to close the transaction by representing and promising to them that all defects and deficiencies would be corrected by Walker, and that those which could not be remedied by Walker would be remedied by United.

8. Walker made one attempt in early March to have United correct a major discrepancy in the home, the replacement of the bathtub and shower unit, at which time Walker was informed by United that the home was shipped as ordered and that United would not accept responsibility for the discrepancy. Walker did not inform the Fousels of United's refusal to accept responsibility and in fact continued to represent to them that it was in written contact with United concerning the deficiencies.

9. Subsequent to the delivery of the mobile home to the Fousels' lot and before the Fousels paid the remaining balance of $22,-647.00, Walker learned that the wrong bathtub and shower unit could not be replaced, changed or altered to conform to the Fousels' specifications and order without irreparable structural damage to the home. The Fousels were not aware of this and Walker not only failed to apprise them of the situation but also actively led them to believe that the defect could and would be cured without damage to the home and to their satisfaction. These representations were intended to induce, and did induce, the Fousels to accept the home, complete the transaction and pay the balance due on the contract.

10. From mid-March through mid-June 1977, the Fousels repeatedly complained to Walker regarding the defects and deficiencies, and Walker continued to represent to them that it was in contact with United and that all defects and deficiencies would be cured.

11. In reliance on Walker's assurances and promises, the Fousels moved into the home and purchased custom-made, after-market items including awnings, skirting and steps.

12. Other than a few minor repairs of an inconsequential nature, Walker never corrected the omissions, defects and deficiencies as requested by the Fousels despite Walker's assurances that these items would be corrected.

13. Walker evaded any effort to correct the deficiencies through such measures as not returning numerous telephone calls from the Fousels, false statements to them that it was in contact with United in an attempt to arrange for repairs and alterations, and a false statement to them that the Walker salesman with whom they had dealt had been fired as a result of the errors in the order to United and the Fousels' dissatisfaction.

█ The findings of fact by the trial court are supported by credible evidence and this court will not disturb them. *Shirley v. National Applicators of Cal., Inc.,* 115 Ariz. 521, 566 P.2d 322 (App.1977).

█ on appeal, appellant Walker claims that the appellees are precluded from receiving punitive damages because they chose as their remedy rescission of the contract. Appellant correctly maintains that the doctrine of election of remedies has been adopted in Arizona. *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969); *Beauchamp v. Wilson,* 21 Ariz.App. 14, 515 P.2d 41 (1973). As stated in *Jennings v. Lee,* the purpose of the doctrine is "to prevent a defrauded party from both repudiating the contract and then suing on it to gain the

benefit of the bargain." 105 Ariz. at 173, 461 P.2d at 167. However, appellant's reliance on the doctrine of election of remedies to support the contention that the award of *any* damages is precluded in an action for rescission of a contract is misplaced. The line of cases cited by appellant for this proposition preclude the defrauded party from rescinding a contract and at the same time recovering benefit of the bargain damages on that same contract. The cases do not hold that a party who has rescinded a contract is thereby precluded from recovering any incidental or consequential damages resulting from a breach of the contract. In *Jennings v. Lee,* supra, the court stated:

> "There is ample authority that a defrauded party may not only receive back the consideration he gave, but also may recover any sums that are necessary to restore him to his position prior to the making of the contract." 105 Ariz. at 173, 461 P.2d at 167.

■ Appellant's reliance on *Hubbard v. Superior Court of Maricopa County,* 111 Ariz. 585, 535 P.2d 1302 (1975), is similarly misplaced. The court there, in a per curiam decision, simply cited *Jennings v. Lee,* supra, as authority for the application of the doctrine of election of remedies, and did not analyze the reasoning behind the doctrine. Dobbs, in his treatise on Remedies at page 634, made this comment concerning the doctrine:

> "The only real reason to deny both rescission and damages is the danger of allowing recovery more than once for a single item of loss."

This danger is not present in the instant case and there is therefore no reason for the application of the rule.

■ A separate issue is the requirement of a showing of actual damages before the court can award punitive damages. *Starkovich v. Noye,* 111 Ariz. 347, 529 P.2d 698 (1974) (punitive damages properly awarded in declaratory judgment action awarding equitable relief of reformation); *Craviolini v. Scholer & Fuller Associated Architects,* 101 Ariz. 33, 415 P.2d 456 (1966); *Downs v.*

*Shouse,* 18 Ariz.App. 225, 501 P.2d 401 (1972).

■ Our decision in *Parks v. Macro-Dynamics, Inc.,* 121 Ariz. 517, 591 P.2d 1005 (App.1979) should be read in light of the above to hold that election of rescission precludes a claim for benefit of the bargain damages, and a lack of showing actual damages precludes an award of punitive damages.

On appeal, appellant does not challenge that part of the judgment awarding the appellees $2,705.26 as consequential damages. Instead, appellant attempts to avoid the internal contradiction in his argument concerning the recovery of damages in an action for rescission by denominating the amount as "out-of-pocket" expenses. This is a semantic distinction only.

While the issue was not raised during trial nor argued in the briefs, we note that this sale would come within the scope of the Uniform Commercial Code, A.R.S. Sec. 44–2201, et seq., and that, under the provisions of the statute, cancellation or rescission of a contract does not preclude the buyer from recovering incidental and consequential damages. A.R.S. Sec. 44–2394. See, *Mobile Home Sales Management, Inc. v. Brown,* 115 Ariz. 11, 562 P.2d 1378 (App.1977). Regarding punitive damages, A.R.S. Sec. 44–2206 provides, inter alia, that penal damages may not be had under the U.C.C. unless provided for in the code or "by other rule of law." In addition, A.R.S. Sec. 44–2400 provides:

> "Remedies for material misrepresentation or fraud include all remedies available under this article for non-fraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy."

■ Appellant does not challenge the trial court's finding that all the essential elements of fraud were present. This court is bound by the trial court's findings unless they are clearly erroneous, giving due regard to the opportunity of the trial court to

weigh the evidence and the credibility of the witnesses. *Donahoe v. Marston*, 26 Ariz.App. 187, 547 P.2d 39 (1976). We find no error on the part of the trial court on this issue, and the findings of fraud provides the "other rule of law" required by A.R.S. Sec. 44–2206, supra.

■■■■ Where the trial court, as the trier of facts, has awarded consequential damages and has found fraud on the part of the defendant, it has discretion to award punitive damages where the defendant's conduct is wanton, reckless or shows spite or ill-will, or where there is a reckless indifference to the interests of others. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974); *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975). Where there is sufficient evidence in the record to sustain the findings of the trial court on an issue of damages, the findings will not be disturbed on appeal. *United Sec. Corp. v. Anderson Aviation Sales Co., Inc.*, 23 Ariz. App. 273, 532 P.2d 545 (1975). The reprehensible conduct remains after plaintiff's election of remedies and must be established to allow the remedy.

■■■■ Appellant finally argues that appellees have fully recovered through refund of the purchase price and the award of consequential damages. Appellant maintains that appellees have been restored to the financial position they occupied prior to the execution of the purchase agreement and therefore they are precluded from recovering punitive damages. This argument overlooks that punitive damages do not stem from enforcement of the contract and are not to compensate the plaintiff for losses sustained, but rather to punish the defendant for his conduct, *Ahmed v. Collins*, 23 Ariz.App. 55, 530 P.2d 900 (1975); *Madisons Chevrolet, Inc. v. Donald*, 109 Ariz. 100, 505 P.2d 1039 (1973), and such an award will not be disturbed on appeal unless wholly unreasonable under the circumstances. *Ahmed v. Collins*, supra; *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966).

■■ Appellees have asked that they also be awarded additional attorney's fees for the appeal, pursuant to A.R.S. Sec. 12–341.-01. Appellant has not responded to this request. The statute applies to appeals as well as to trial court actions. *Gressley v. Patterson Tillage & Leveling Inc.*, 119 Ariz. 154, 579 P.2d 1124 (App.1978). The purpose of the statute is ". . . to mitigate the burden of the expense of litigation for a just claimant." Plaintiffs/appellees have now prevailed both in the trial court and on appeal and have had considerable expense.

Appellees are therefore awarded an additional $1,000 as attorneys' fees.

Affirmed.

RICHMOND, C. J., and HOWARD, J., concurring.