SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MEDASYS ACQUISITION CORPORATION, dba MEDASYS DIGITAL SYSTEMS, | Arizona Supreme Court No. CV-02-0045-PR |
| Plaintiff, Counterdefendant-Appellant, | Court of Appeals Division One No. 1 CA-CV 00-0472 |
| v. | Maricopa County |
| SDMS, P.C., an Arizona professional corporation, | Superior Court No. CV 98-011575 |
| Defendant, Counterclaimant-Appellee. | **O P I N I O N** |

Appeal from the Superior Court of Maricopa County
The Honorable Jonathan H. Schwartz, Judge

Court of Appeals, Division One
Memorandum Decision

**VACATED IN PART AND REMANDED**

WARNICKE & LITTLER, P.L.C.                                    Phoenix
     by    Thomas E. Littler
     and
FINE & ASSOCIATES, P.A.                      Coral Gables, Florida
     by    Edward A. Licitra
Attorneys for Plaintiff, Counterdefendant-Appellant

BURCH & CRACCHIOLO, P.A.                                      Phoenix
     by    Bryan F. Murphy
     and   John D. Curtis
Attorneys for Defendant, Counterclaimant-Appellee

**B E R C H**, Justice

¶1        We granted review to determine whether a party's election of the equitable remedy of rescission automatically precludes it from also receiving an award of punitive damages. We conclude that it does not.

**BACKGROUND**

¶2      In January 1998, SDMS, a medical practice, contracted to purchase computer-assisted diagnostic nuclear imaging equipment from Medasys Acquisition Corporation.  The contract required that SDMS trade in its old diagnostic imaging equipment and make a down payment of $10,900.  SDMS was to pay the balance of $98,100 in three installments after Medasys installed the equipment and trained SDMS personnel to use it.  Medasys understood SDMS's requirements that the equipment perform "head to toe" whole body imaging, that the software perform "renal function studies at all ages with age-corrected nomograms for all age groups," and that the equipment perform three-dimensional studies.  Medasys representatives assured SDMS that the equipment could perform these functions.

¶3      After Medasys delivered the imaging equipment, SDMS discovered that it did not perform the required functions.  The whole body imaging function, which was supposed to generate a computer image of a subject's body, would produce an image on which the subject's feet would appear on the top of the subject's head on subjects taller than 1.9 meters.  The renal software could not provide age-corrected nomograms for individuals over sixty years of age – a group that comprised a large portion of SDMS's practice – and the camera head did not pivot freely, thus preventing it from making three-dimensional studies.

¶4     SDMS exchanged several letters with Medasys attempting to resolve the problems. On April 21, 1998, Medasys demanded that SDMS begin making payments on the balance of the contract. When SDMS refused to pay until the problems with the equipment were corrected, Medasys sued for breach of contract and unjust enrichment. SDMS counterclaimed for breach of contract, breach of warranty, and consumer fraud,[1] seeking consequential damages, punitive damages, and rescission. SDMS offered to return Medasys's equipment in exchange for the return of its down payment and SDMS's original equipment.

¶5     During a three-day trial, SDMS presented damaging testimony from former Medasys employees regarding that company's fraudulent business practices. A former Medasys field engineer testified that Medasys routinely delivered equipment that the company knew was not functioning properly. Indeed, he testified that Medasys knew that the whole body imaging function on the diagnostic imaging machine sold to SDMS was not working properly before it was delivered to SDMS. An independent contractor who handled sales for Medasys testified that he was instructed to "[g]et the sale. Promise [SDMS] whatever you need to. We'll worry about it later." He characterized such promises as routine and

---

[1]    Although SDMS requested an instruction on consumer fraud, a cause of action that would have supported punitive damages, the trial court did not give one. The court of appeals did not address the issue because SDMS did not object to the failure to give the instruction.

customary business practices for Medasys.

¶6　　　　The jury returned a verdict in favor of SDMS.  The jury, sitting in an advisory capacity on the equitable claims, recommended awarding SDMS $20,488 in rescissory damages and $275,000 in punitive damages.  The rescissory damages equaled the down payment of $10,900 and an additional $9,588[2] to compensate SDMS for its old imaging equipment, which Medasys had either thrown away or disassembled for parts and thus was unable to return.  The trial court adopted the jury's recommendation, finding that "the evidence was clear and convincing that Medasys consciously disregarded the risk [to] . . . SDMS [by] not getting equipment capable of performing the functions Medasys knew SDMS required."

¶7　　　　Medasys appealed, arguing among other things that the trial court erred as a matter of law by awarding punitive damages where no actual damages had been awarded.  The court of appeals agreed and vacated the portion of the judgment awarding punitive damages to SDMS.  *Medasys Acquisition Corp. v. SDMS, P.C.*, 1 CA-CV 00-0472, slip op. at ¶ 27 (Jan. 3, 2002) (mem. decision).  We granted review to determine whether punitive damages were properly awarded.

## DISCUSSION

¶8　　　　Whether punitive damages are awardable on an equitable

---

[2]　　　The parties' contract had provided this value for SDMS's old machine.

-4-

claim is a legal issue, which we review de novo. *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999).

¶9        Citing *Hubbard v. Superior Court (American Alliance Life Insurance Co.)*, 111 Ariz. 585, 535 P.2d 1302 (1975), the court of appeals held that SDMS's election of the equitable remedy of rescission precluded its claim for punitive damages. This court's summary disposition in *Hubbard*, however, did not foreclose an award of punitive damages in an equity case. It simply reaffirmed the traditional rule that actual damages must be proved before punitive damages may be recovered. *Id.* at 586, 535 P.2d at 1303. The court of appeals evidently concluded that SDMS had not proved actual damages.

¶10       This court's two-paragraph per curiam decision in *Hubbard* must be read in light of the expanded opinion on the subject in *Starkovich v. Noye*, 111 Ariz. 347, 529 P.2d 698 (1974), decided just six months earlier. In *Starkovich*, we concluded that Arizona courts may award punitive damages in an equitable action and construed broadly the "actual damages" needed to support the award as including the alteration of one's position to one's detriment.[3] *See id.* at 352, 529 P.2d at 703.

---

[3]       In seeming to require that monetary damages be proved, the court in *Hubbard* failed to give effect to the well-considered rationale in *Starkovich* for expanding the definition of "actual damages" to allow Arizona courts to provide more complete relief in equity cases. To the extent that *Hubbard* may be read to conflict with *Starkovich*, *Hubbard* is overruled.

-5-

**¶11** *Starkovich* informs the disposition of this case. The plaintiff in *Starkovich* had sued for a declaratory judgment, seeking reformation of a contract (an equitable claim) and punitive damages (a legal claim) for the defendants' alleged fraud. *Id.* at 348, 529 P.2d at 699. The trial court found reformation appropriate and awarded punitive damages. *Id.* at 350, 529 P.2d at 701. The court of appeals reversed. *Id.* Agreeing with the trial court, this court noted that "Arizona ha[d] long abolished the distinction between legal and equitable action[s]," *id.* at 351, 529 P.2d at 702. We thus reasoned on review that courts should be able to award the relief appropriate in each case "without distinction as to the nature of the relief demanded" and further directed that courts "*shall give all the relief either in law or equity to which a party may show himself entitled.*" *Id.* (quoting *McRae v. Lois Grunow Memorial Clinic*, 40 Ariz. 496, 14 P.2d 478 (1932)). We found no "reason in logic to deny a complete remedy for a fraud," *Starkovich*, 111 Ariz. at 352, 529 P.2d at 703, and therefore allowed the recovery of punitive damages.

**¶12** Much as Medasys does in this case, the defendants in *Starkovich* objected that the award of equitable relief did not satisfy the requirement that "actual damages" be proved before punitive damages can be awarded. They argued that the reformation could not be "construed as compensatory damages sufficient to satisfy the requirement that actual damages must be awarded in

order to support [the] punitive damages [award]." *Id.* at 350, 529 P.2d at 701. We disagreed and expanded the definition of actual damages to include not only pecuniary loss, but also "*the alter-ation of one's position to his prejudice*." *Id.* at 351, 529 P.2d at 702 (quoting *Nab v. Hills*, 452 P.2d 981, 987 (Idaho 1969) (emphasis in original)).

¶13    The expanded definition applies here. SDMS has altered its position to its prejudice in reliance upon Medasys's false representations that the new medical imaging equipment would fulfill specific requirements. Although SDMS offered to return Medasys's equipment for return of its old machine and a refund of its down payment, Medasys, having destroyed or parted-out SDMS's machine, was unable to return it. SDMS therefore was left with no working machine and not enough money to buy a functioning one, an alteration of its position to its detriment because of its reliance on Medasys's fraudulent promises.[4]

¶14    The traditional rule requires an award of actual damages before punitive damages may be awarded, and we adhere to that rule. But several reasons support expanding the definition of actual damages to allow other types of harms to serve as the actual

---

    [4]    The court of appeals characterized this state of affairs as a return to the status quo ante. We disagree. Before it began its dealings with Medasys, SDMS had functioning, though concededly inferior, diagnostic imaging equipment. During its interaction with Medasys and for some time afterward, SDMS was left without vital diagnostic equipment.

damages predicate that will support the recovery of punitive damages.

¶15     First and foremost, Arizona authorities have long subscribed to the notion that courts must be able to provide the relief to which the parties before them are entitled. *See, e.g., id.* at 352, 529 P.2d at 702; *Jennings v. Lee*, 105 Ariz. 167, 173, 461 P.2d 161, 167 (1973) (affirming the court's "ample authority" to award a defrauded party not only "the consideration he gave," but also "any sums that are necessary to restore him to his position prior to the making of the contract"); *Fousel v. Ted Walker Mobile Homes, Inc.*, 124 Ariz. 126, 129, 602 P.2d 507, 510 (App. 1979) (upholding an award of punitive damages on an equitable claim of rescission where consequential damages were also awarded); Dan B. Dobbs, THE LAW OF REMEDIES § 3.11(10) (2d ed. 1993); Ariz. R. Civ. P. 54(d) (requiring Arizona courts to award appropriate relief in any civil action, "even if the party has not demanded such relief in the party's pleadings"); Ariz. Rev. Stat. ("A.R.S.") § 12-1838 (1994) (allowing "further relief" in a declaratory judgment case); A.R.S. § 47-2720 (1997) (Uniform Commercial Code provision stating that rescission of a contract "shall not be construed as a renunciation or discharge of any claim in damages").[5]   No reason

---

[5]     Although the parties did not raise the issue, this sale would fall within the scope of the Uniform Commercial Code ("UCC"), A.R.S. §§ 47-1101 to -9501 (1997).  As noted above, under UCC § 47-2720, rescission of a contract does not bar a claim for damages.

justifies allowing punitive damages for the tort of fraud, which by its nature involves intentional wrongdoing, but denying such damages for tortious fraud in connection with an equitable action. *See, e.g., Mehovic v. Mehovic*, 514 S.E.2d 730, 734 (N.C. App. 1999); *Black v. Gardner*, 320 N.W.2d 153, 161 (S.D. 1982). Thus, if a party has "pursued a course of conduct knowing that it created a substantial risk of significant harm to others" and its conduct was guided by evil motives, punitive damages should be available to punish such behavior. *See Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986).

¶16     Second, to deny punitive damages to prevent "double recovery" of an item of contract damages protects against an unfounded concern. *See Fousel*, 124 Ariz. at 129, 602 P.2d at 510 (quoting Dan B. Dobbs, THE LAW OF REMEDIES § 9.4, at 634 (1973)). An award of punitive damages in an action for rescission does not raise this double-compensation concern because "punitive damages do not stem from enforcement of the contract and are not to compensate the plaintiff for losses sustained, but rather to punish the defendant for his conduct." *Id.* at 130, 602 P.2d at 511. Therefore, there is no fear of overcompensation for any element of contract damages, which is the fear underlying the preclusion of both compensatory damages and rescission.

¶17     Finally, we do not believe, as Medasys asserts, that allowing punitive damages in an equitable action will encourage

parties to sue expecting a "windfall [of punitive damages] to the recipient." Punitive damages are awarded only "in the most egregious of cases, where [a plaintiff proves by clear and convincing evidence that the defendant engaged in] reprehensible conduct" and acted "with an evil mind." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32, 723 P.2d 675, 680-81 (1986); *Fousel*, 124 Ariz. at 130, 602 P.2d at 511. For that reason, punitive damages should rarely be awarded. In those cases in which they are appropriate, punitive damages should be available to deter egregious conduct.

¶18 We therefore agree with those authorities that have observed that an election of an equitable remedy need not preclude an award of punitive damages. *E.g.*, Dan B. Dobbs, THE LAW OF REMEDIES § 3.11(10) (2d ed. 1993); Gary L. Monserud, *Rescission and Damages for Buyer Due to Seller's Fraudulent Inducement of an Article 2 Contract for Sale*, 1998 Colum. Bus. L. Rev. 331, 404; Note, *Recent Developments: Punitive Damages Held Recoverable in Action for Equitable Relief*, 63 Colum. L. Rev. 175, 178-79 (1963); *Madrid v. Marquez*, 33 P.3d 683, 686 (N.M. Ct. App. 2001); *Mehovic*, 514 S.E.2d at 734; *Black*, 320 N.W.2d at 161. The critical inquiry should be whether such an award is appropriate to penalize a party for "outwardly aggravated, outrageous, malicious, or fraudulent conduct" that is coupled with an "evil mind." *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680. If it is, punitive damages should be

-10-

available to allow the imposition of a remedy appropriate to punish the wrongful act and to remedy the injury caused.

¶19    No reason justifies distinguishing between rescissory damages and compensatory damages as a basis for allowing or denying an award of punitive damages.  Conduct so egregious as to warrant punitive damages if compensatory damages are awarded should similarly support an award of punitive damages if only rescissory damages are awarded.  *See* Dobbs, THE LAW OF REMEDIES § 3.11(10) (2d ed. 1993); Note, *Punitive Damages Held Recoverable, supra* at 178-79.  This conclusion follows the modern trend of allowing "punitive damages in equity in order to facilitate judicial administration, to deter misconduct, and to completely serve justice."  *Madrid*, 33 P.3d at 686; *see also Forster v. Boss*, 97 F.3d 1127 (8th Cir. 1996) (interpreting Missouri law); *Village of Peck v. Denison*, 450 P.2d 310 (Idaho 1969); *Mehovic*, 514 S.E.2d at 734.  It also comports with the Arizona policy of providing complete relief to injured parties.

¶20    In the case before us, SDMS succeeded in proving Medasys's fraudulent conduct.  The jury found that SDMS sustained actual damages and recommended awarding SDMS rescissory damages.  In addition, the jurors found by clear and convincing evidence that Medasys employees acted with evil intent in their dealings with SDMS and therefore the jury recommended an award of punitive damages to punish Medasys for its conduct.  Our review shows that

such an award may be appropriate.[6]

## CONCLUSION

¶21     We vacate the portion of the court of appeals' decision reversing the award of punitive damages and remand to that court for resolution of issues left undecided.

_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice

_____
Joseph W. Howard, Judge*

     *Pursuant to Ariz. Const. Article VI, Section 3, the Honorable Joseph W. Howard, Judge of the Arizona Court of Appeals, Division Two, was designated to sit on this case.

_____

     [6]     Medasys asserted in the court of appeals that there was insufficient evidence that its employees acted with an "evil mind" to support the punitive damages award.  Because that court held that punitive damages were not recoverable, it did not rule on the sufficiency of the evidence issue.  We therefore remand that issue to the court of appeals for determination.