326 P.3d 268

David CARUTHERS and Ruby Rumiko Tanouye, husband and wife, Plaintiffs/Appellants,

v.

Clinton T. UNDERHILL and Kimberly Underhill, husband and wife; James T. Underhill, a single man, Defendants/Appellees.

No. 1 CA–CV 12–0618.

Court of Appeals of Arizona, Division 1.

April 3, 2014.

**3**

Aiken Schenk Hawkins & Ricciardi P.C., by Joseph A. Schenk, Robert C. Van Voorhees, Phoenix, Counsel for Plaintiffs/Appellants.

Jennings, Strouss & Salmon, P.L.C., by John J. Egbert, Michael J. O'Connor, Paul G. Johnson, Phoenix, Counsel for Defendants/Appellees.

Presiding Judge PETER B. SWANN delivered the opinion of the Court, in which Judge PATRICIA K. NORRIS and Judge MARGARET H. DOWNIE joined.

## OPINION

SWANN, Judge.

¶ 1 In this securities fraud case, we must decide whether the Plaintiffs were required to elect between the remedies of rescission and damages, whether the court properly denied them the remedy of rescission after they prevailed at trial on liability, and whether their election of rescission was revocable once the court determined after trial that the remedy was unavailable. We hold that when a plaintiff sues on a single theory of fraud-in-the-inducement, an election of remedies is not required. We further hold that the court correctly determined that rescission in securities fraud cases is subject to equitable defenses, but erred by disallowing the remedy of rescission based on the findings it made. Finally, we hold that if rescission were unavailable, Plaintiffs should have been allowed a damage remedy. We therefore reverse in part and remand for a new trial at which the Plaintiffs may seek to satisfy the verdicts in their favor by damages, rescission, or both remedies.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This case arises out of the sale and purchase of shares in Underhill Holding Company, Inc. ("UHC"), a closely held company whose wholly owned subsidiary, Underhill Transfer Company ("UTC"), owns and manages commercial real estate. As of 2005, the number of issued shares in UHC totaled 1,159. UHC and UTC officers James and Clinton Underhill (father and son) owned, respectively, 449 and 12 shares. The remaining shares were owned by other Underhill family members and by third parties. Among the third parties were husband and wife David Caruthers and Ruby Rumiko Tanouye (collectively, "Plaintiffs").

¶ 3 Starting in 2006, Clinton began purchasing other shareholders' shares, eventually acquiring sufficient shares to give himself

and his father together a controlling interest in UHC. Clinton's purchases were funded, at least in part, by money that James loaned to Clinton and by a loan that James co-signed with Clinton.

¶ 4 Clinton purchased Plaintiffs' 64 shares for $6,000 per share in July 2006. Several months later, in October 2006, Plaintiffs wrote to Clinton and accused him of knowingly misrepresenting UHC's worth for the purpose of purchasing the shares at a lower price. Plaintiffs claimed that Clinton had provided them with an outdated appraisal to establish the purchase price and had lied when they asked him whether a more recent appraisal existed. Plaintiffs demanded the return of their stock certificates and voting rights pending an agreement to adjust the purchase price. Clinton did not respond to this demand.

¶ 5 In June 2007, Plaintiffs filed a complaint asserting claims against Clinton for common law fraud, consumer fraud, securities fraud, negligent misrepresentation, and breach of fiduciary duty, and asserting claims against James for conspiracy and aiding and abetting. Plaintiffs requested compensatory damages or, alternatively, "an order of restitution requiring Clinton to return to Plaintiffs that portion of their UHC stock having an aggregate value in excess of $384,000 [the purchase price paid by Clinton]."

¶ 6 Plaintiffs' action was consolidated with similar actions by other former shareholders who had entered purchase agreements with Clinton: Kyle Underhill, Helena Underhill, Chester Allen, and William Macbeth. The shareholders together filed a first amended complaint in June 2008 and a second amended complaint in October 2008. The amended complaints asserted the same causes of action as the original pleading and, like the original pleading, sought damages or a partial return of shares.

¶ 7 In December 2008, the superior court rejected Plaintiffs' partial refund demand. Treating it as a demand for partial rescission, the court ruled it unavailable as a matter of law. The same month, the shareholders' counsel sent a letter to Clinton's counsel "tendering to Clinton ... the complete rescission of the stock transactions." Clinton did not agree to the tendered rescission. Accordingly, in February 2009, the shareholders moved for leave to amend their complaint to request complete rescission as the alternative to damages. In support of their motion, the shareholders argued that they "will be required to make an election between these two alternative remedies when [the] case is submitted to the jury, but not before."

¶ 8 Clinton and James opposed the shareholders' motion to amend, contending, *inter alia,* that the proposed amendment was futile because rescission had not been timely demanded. Over that objection, the superior court granted the motion for leave to amend in April 2009, and the shareholders filed the third amended complaint in February 2010. Clinton and James continued to dispute the timeliness of rescission.

¶ 9 The matter proceeded to a ten-day jury trial commencing October 13, 2010. By that time, the only shareholders remaining in the case were Plaintiffs, Allen, and Macbeth.[1] On the sixth day of trial, the court asked the shareholders' counsel whether his clients had decided what remedy they would elect. Counsel responded that Allen and Macbeth would elect damages and Plaintiffs would elect rescission.

¶ 10 On the next day of trial, November 3, James moved for judgment as a matter of law against Plaintiffs on their claims against him for conspiracy and aiding and abetting. James argued that he could not provide Plaintiffs' elected rescission remedy because he was not the defendant who had obtained their shares. Over Plaintiffs' objection, the court granted James's motion.

¶ 11 Clinton also moved for judgment as a matter of law against Plaintiffs, again arguing that they had not timely demanded rescission. Plaintiffs disagreed and moved that the question of rescission be decided by the

---

1. The court entered summary judgment against Kyle and Helena Underhill shortly before trial. We affirmed the summary judgment in *Caruthers* *v. Underhill,* 230 Ariz. 513, 287 P.3d 807 (App. 2012).

jury. The court did not immediately rule on either motion.

¶ 12 On November 5, the parties rested and the evidence closed. On November 9, before meeting with counsel to settle the final jury instructions, the court issued two written rulings. First, the court denied Clinton's motion for judgment as a matter of law, concluding that Clinton had not shown that he was prejudiced by Plaintiffs' delay in asserting rescission and that the delay was not unreasonable as a matter of law. Instead, the court ruled that the matter should be submitted to the trier of fact. Second, the court denied Plaintiffs' request that the jury decide rescission, concluding that Plaintiffs were not entitled to a jury trial on that remedy because it was equitable in nature. The court ordered that "as to the [Plaintiffs]' requested remedy of rescission, the jury will remain impaneled as an advisory jury."

¶ 13 After the parties received the court's written rulings, defense counsel moved for and obtained dismissal of Plaintiffs' request for damages, and of Allen and Macbeth's request for rescission, based on the parties' chosen remedies. The court granted the dismissals without objection by Plaintiffs. Plaintiffs then agreed to jury instructions and verdict forms showing that Plaintiffs sought rescission and punitive damages only.

¶ 14 The next day, the jury was given its final instructions, including a stipulated instruction that Plaintiffs had not offered to repay Clinton the full purchase price before December 2008. The jury returned verdicts in favor of Allen and Macbeth on all counts, awarding each of them $224,200 in compensatory damages and $4,000 in punitive damages. The jury also returned a verdict in favor of Plaintiffs on common law fraud, consumer fraud, securities fraud, and breach of fiduciary duty, and returned an advisory finding that Plaintiffs were entitled both to rescission and $15,000 in punitive damages. The jury responded "yes" to an interrogatory that asked whether Plaintiffs had notified Clinton of their intent to rescind the sale within a reasonable time after discovery of his improper conduct.

¶ 15 After the jury returned its verdicts, the parties submitted posttrial memoranda on whether Plaintiffs were entitled to rescission. Reversing its earlier ruling, the court then entered an order denying rescission, based on its conclusion that Plaintiffs had unreasonably delayed in rescinding and had waived their right to rescission by ratifying the stock purchase transaction. Plaintiffs timely moved for new trial, arguing that if they were not awarded rescission, they were entitled to a new trial on damages because the court's ruling on rescission meant that rescission had never been actually available for election.

¶ 16 The court denied Plaintiffs' motion for new trial and entered a judgment in favor of the defendants on all claims that also required Plaintiffs to pay the defendants more than $100,000 in attorney's fees and costs. Plaintiffs timely appeal.

## DISCUSSION

¶ 17 We will reverse the denial of a motion for new trial when the denial is based upon an error of law. See Grant v. Ariz. Pub. Serv. Co., 133 Ariz. 434, 455–56, 652 P.2d 507, 528–29 (1982); Adroit Supply Co. v. Elec. Mut. Liability Ins. Co., 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975).

I. THE SUPERIOR COURT ERRED AS A MATTER OF LAW BY DENYING PLAINTIFFS ANY REMEDY.

    A. The Superior Court Erred by Applying the Election-of-remedies Doctrine to Plaintiffs' Claims, but Plaintiffs Invited This Error.

¶ 18 Plaintiffs prevailed on the liability portion of their claims but received no relief because the court held after trial that the remedy they elected was unavailable to them as a matter of law. We hold that the election-of-remedies doctrine cannot be applied to compel a high-stakes choice between a real remedy and an illusory remedy—a successful plaintiff is entitled to an available remedy.

¶ 19 The election-of-remedies doctrine provides that a party who has been fraudulently induced to enter into a contract must choose to either disavow the contract

and seek a return to the *status quo ante,* or affirm the contract and sue for damages for breach. *Miller v. Ariz. Bank,* 45 Ariz. 297, 314–15, 43 P.2d 518, 525 (1935). A claimant may not "both repudiat[e] the contract and then su[e] on it to gain the benefit of the bargain." *Jennings v. Lee,* 105 Ariz. 167, 173, 461 P.2d 161, 167 (1969). As Professor Dobbs explains,

> [t]he two remedial approaches, one based on affirmance, the other on avoidance, are inconsistent in the sense that they point in different directions. In some cases and with some claims they are inconsistent in the added sense that the plaintiff who recovered both kinds of remedies might be getting more remedial desert than he should.

3 Dan B. Dobbs, *Law of Remedies* § 12.7(6), at 186 (2d ed.1993) [hereinafter 3 Dobbs].

¶ 20 The doctrine therefore prevents aggrieved parties from prevailing on logically inconsistent theories of the case,[2] and serves to guard against overcompensation. *Miller,* 45 Ariz. at 315, 43 P.2d at 525; *Fousel v. Ted Walker Mobile Homes, Inc.,* 124 Ariz. 126, 129, 602 P.2d 507, 510 (App. 1979). But if alternative "theories of recovery are factually consistent, an inconsistency does not arise until one of the remedies is satisfied[, and therefore] consistent remedies may be pursued concurrently even to final adjudication, but the satisfaction of one claim bars the other one." *Bolinger v. Kiburz,* 270 N.W.2d 603, 606 (Iowa 1978); *see also Dopp v. HTP Corp.,* 947 F.2d 506, 515–16 (1st Cir.1991). And "[i]f the award [of both types of remedies] can be justified as providing full compensation, or as providing full restitution, then the remedies are not truly inconsistent." 3 Dobbs § 12.7(6), at 187.

¶ 21 Accordingly, our supreme court has held that

> [t]he election of remedies doctrine merely prevents a plaintiff from "both repudiating [a] contract and then suing on it to gain

the benefit of the bargain." The doctrine does not bar a party seeking rescission from receiving damages. A plaintiff electing rescission is entitled to those damages that are necessary to make him whole. *Landin v. Ford,* 151 Ariz. 278, 279, 727 P.2d 331, 332 (1986) (alteration in original) (citation omitted) (quoting *Jennings,* 105 Ariz. at 173, 461 P.2d at 167). "[A] defrauded party may not only receive back the consideration he gave, but also may recover any sums that are necessary to restore him to his position prior to the making of the contract." *Jennings,* 105 Ariz. at 173, 461 P.2d at 167. Where there is no "danger of allowing recovery more than once for a single item of loss, ... there is therefore no reason for the application of the [election-of-remedies] rule." *Fousel,* 124 Ariz. at 129, 602 P.2d at 510 (citation omitted) (internal quotation mark omitted).

¶ 22 In this case, election of remedies was never necessary. Plaintiffs did not seek to recover on inconsistent theories of liability. They had only one theory of the case: fraud. They did not sue for breach of contract, and their case did not depend on affirmance of the contract. To be eligible for either tort damages or rescission, Plaintiffs were required to prove a single set of facts. Because the remedies of damages and rescission were not based on inconsistent theories, Plaintiffs should not have been compelled to choose one remedy to the exclusion of the other. They established liability and were therefore entitled to be made whole—whether by rescission, damages, or a combination of the two.

¶ 23 We cannot reverse on the ground that the court applied the election-of-remedies doctrine, however, because Plaintiffs invited the error.[3] They never objected to the notion that they were required to choose between remedies, and in fact affirmatively set the error in motion by arguing in their February 2009 motion to amend that

---

2. As then-Judge Cardozo observed, "[o]ften what is spoken of in opinions as a choice between remedies is in reality a choice of 'an alternative substantive right.'" *Schneck v. State Line Tel. Co.,* 238 N.Y. 308, 144 N.E. 592, 593 (1924) (quoting *United States v. Or. Lumber Co.,* 260

U.S. 290, 307, 43 S.Ct. 100, 67 L.Ed. 261 (1922) (Brandeis, J., dissenting)).

3. Our discussion of the issue is necessary, however, because it will bear on the trial on remand.

they would make an election. "By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error." *Schlecht v. Schiel*, 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953), *abrogated in part on other grounds as recognized in A Tumbling–T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552, ¶ 23, 5 P.3d 259, 266 (App.2000). In other words, "[o]ne who misconceives the law governing his rights in a trial, and succeeds in convicting the court thereof, ought to be estopped to take any advantage of it upon appeal." *Wilkinson v. Phx. Ry. Co. of Ariz.*, 28 Ariz. 216, 222, 236 P. 704, 706 (1925). This rule applies even where, as here, there is no evidence that the error was invited for the improper purpose of profiting on appeal. *See Sw. Cotton Co. v. Ryan*, 22 Ariz. 520, 527, 199 P. 124, 126–27 (1921). In considering Plaintiffs' appeal, we therefore assume that the election-of-remedies doctrine had application and decide whether relief was properly denied under it.

B.  The Superior Court Erred by Denying Damages After Deeming Rescission Unavailable.

¶ 24  The election-of-remedies doctrine requires an election between two or more inconsistent remedies that actually exist at the time of the election. *Latman v. Burdette*, 366 F.3d 774, 782 (9th Cir.2004) (describing three requirements for application of election-of-remedies doctrine, including "two or more remedies must have existed at the time of the election"), *abrogated on other grounds by Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014); *see also Aritex Land Co. v. Baker*, 14 Ariz. App. 266, 274, 482 P.2d 875, 883 (1971) ("An election of remedies is the choice of one of two or more *co-existing* remedial rights where such rights arise out of the same facts." (emphasis added)). "If in fact or in law only one remedy exists, there can be no election by the pursuit of another and mis-

taken remedy." *Navajo–Apache Bank & Trust Co. v. Desmont*, 19 Ariz. 335, 337, 170 P. 798, 799 (1918) (citation omitted). The concept of election is meaningless if only one remedy exists. *Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 51 (9th Cir.1966).[4]

¶ 25  To help avoid mistaken elections and allow plaintiffs to "take advantage of any possible development in the evidence which would show [them] entitled to recovery and thus prevent [them] being forced to elect in advance and at [their] peril which theory [they] will proceed upon," our rules of civil procedure allow inconsistent pleadings until the conclusion of trial. *Edward Greenband Enters. of Ariz. v. Pepper*, 112 Ariz. 115, 117, 538 P.2d 389, 391 (1975) (citation omitted); *see also* 3 Dobbs § 12.7(6), at 187 (observing that a pre-verdict election may force plaintiffs to a "blind choice"). But an election must be made at the conclusion of the case and "[o]nce an election has been made with due knowledge of the facts, a party cannot complain if the remedy selected is inadequate." *Canton v. Monaco P'ship*, 156 Ariz. 468, 470, 753 P.2d 158, 160 (App.1987).

¶ 26  In denying Plaintiffs' motion for new trial, the superior court held that they were "bound by their election" of rescission because they made that election with full knowledge that the remedy might be unavailable. The court explained that "[a]s early as 2009, over a year and a half before the trial, [P]laintiffs knew there was considerable uncertainty as to whether they would prevail on their rescission remedy," and "[P]laintiffs could not have relied on the court's Rule 50(a) Order [denying Clinton's motion for judgment as a matter of law] in making their election" because "Plaintiffs made their election of rescission on October 29, 2010, during their case-in-chief[, and t]he court did not issue its Rule 50(a) Order until November 9, 2010."

¶ 27  It is true that when Plaintiffs informed the court on October 29 that they

4.  The election-of-remedies doctrine is "a long observed and deeply entrenched rule of procedure." *Friederichsen v. Renard*, 247 U.S. 207, 211, 38 S.Ct. 450, 62 L.Ed. 1075 (1918). But "it has never been a favorite of equity" and has long been recognized as a "harsh" and "largely obsolete rule, the scope of which should not be extended" to "subordinate substance to form of procedure, with the result of defeating a claim . . . sufficiently established to justify a verdict." *Id.* at 211–13, 38 S.Ct. 450.

would be electing rescission, they had reason to know that the defendants debated that remedy's availability. But that fact did not bind Plaintiffs to the election of a nonexistent remedy. Plaintiffs did not acquiesce to dismissal of their damages claim until after the court ruled on November 9 that the evidence did not support the defendants' objections to rescission, and Plaintiffs reasonably expected that they were not legally barred from obtaining rescission. This is not a case in which the remedy Plaintiffs elected proved merely to be "inadequate," as it would have been had they elected damages and received a smaller award than they sought. This is a case in which Plaintiffs prevailed, yet received *no* remedy. In these circumstances, there was no reason that the damages remedy should not have been revived when the court reversed its earlier ruling and found that rescission was unavailable. To hold otherwise would be to extend the scope of the election-of-remedies doctrine beyond its just purposes and "permit a doctrine of equitable origin to be used to accomplish an inequitable result." *UFG, LLC v. Sw. Corp.*, 848 N.E.2d 353, 363 (Ind.Ct.App.2006) (citation omitted).

¶ 28 We reverse the judgment against Plaintiffs, including the award of attorney's fees and costs, and remand for new trial. The new trial shall address the merits of the claims against James and the relief that may be recovered on the jury verdicts against Clinton. On remand, the election-of-remedies doctrine shall not bar Plaintiffs from seeking rescission, damages, or a combination thereof on their verdicts against Clinton.

## II. THE AVAILABILITY OF RESCISSION IS A QUESTION FOR THE COURT, AND THE COURT MAY CONSIDER EQUITABLE DEFENSES.

### A. The Propriety of Rescission Under A.R.S. § 44–2002 Is a Question for the Court To Decide.

¶ 29 The superior court ruled that Plaintiffs were not entitled to a jury trial on rescission. Plaintiffs contend that this was error under A.R.S. § 44–2002, the provision of the Arizona Securities Act that grants a private right of action to sellers who are victims of securities fraud. On this point, we affirm.

¶ 30 We must first determine whether § 44–2002 prescribes an equitable remedy. The separate equity courts that existed before law and equity merged did not provide jury trial as of right, and merger did not change that practice: most states, including Arizona, preserve the right to jury trial where it would have existed under the common law before statehood. *In re Estate of Newman*, 219 Ariz. 260, 272, ¶ 45, 196 P.3d 863, 875 (App.2008); 1 Dan B. Dobbs, *Law of Remedies* § 2.6(2), at 153 (2d ed.1993) [hereinafter 1 Dobbs]. The historical differences between the courts of equity and the courts of law have created at least two tests for determining the equitable status of a claim. 1 Dobbs § 2.6(2), at 154–55. Under the remedial test, "courts characterize claims according to the remedies sought rather than according to subject matter or substantive rules involved." *Id.* at 156. Under the substantive test, courts characterize claims without regard to the remedy sought, instead asking "if substantive equitable doctrines or rules would govern the case, or if the case was simply regarded as equitable in some important sense before the [states'] constitutions were adopted." *Id.* at 162. In general, "[t]he courts have not settled fully on any firm approach." *Id.* at 155.

¶ 31 The Arizona Supreme Court has applied both tests to determine the existence of a right to jury trial. *Compare, e.g., Kostolansky v. Lesher*, 95 Ariz. 103, 106, 387 P.2d 804, 806 (1963) (applying remedial test), *with Derendal v. Griffith*, 209 Ariz. 416, 419–20, ¶¶ 10–12, 104 P.3d 147, 150–51 (2005) (applying substantive test). Using the remedial test, this court has held that equitable remedies are for the court to decide. *See County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 609, ¶ 61, 233 P.3d 1169, 1188 (App.2010) ("Whether Yakima was entitled to specific performance [in a breach of contract case] was a decision for the trial court sitting as a court of equity rather than the jury, which acted in an advisory role concerning the propriety of any equitable remedy."); *State ex rel. Corbin v. United Energy Corp. of Am.,*

151 Ariz. 45, 53, 725 P.2d 752, 760 (App.1986) (holding that in consumer fraud action, "[r]estitution, an equitable remedy, was for the judge to decide while civil penalties were left to the jury."). The supreme court has held that an action for rescission of a fraudulently induced contract may have an advisory jury only, and that rescission is governed by equitable principles whether it is the object of a suit in equity or a claim for rescission at law. *Mahurin v. Schmeck*, 95 Ariz. 333, 339, 390 P.2d 576, 579 (1964); *Kostolansky*, 95 Ariz. at 106, 387 P.2d at 806. As a matter of Arizona common law, therefore, we conclude that the remedy of rescission is for the court to decide.

¶ 32 Plaintiffs contend, however, that the "rescission" they sought under § 44–2002 was not truly equitable in nature. Section 44–2002(A) provides that a sale of securities procured by fraud "is voidable at the election of the seller of the securities, and the seller may bring an action ... to recover the amount of the seller's damages, with interest, taxable court costs and reasonable attorney fees." According to Plaintiffs, the statute does not allow the court to deny rescission when it is requested, and a judgment ordering rescission "is not at all like the equitable remedy of rescission, but is instead an action for recovering possession of the Seller's specific personal property."

¶ 33 We generally avoid interpreting a statute to change the common law unless the legislature clearly manifests intent to effect change. *Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422, ¶ 12, 87 P.3d 831, 835 (2004). By its plain language, § 44–2002(A) does nothing more than authorize the seller to seek rescission. The statute provides that a fraudulent sale is "voidable." This means that the sale is *subject to* rescission or ratification at the seller's option. *Princess Plaza Partners v. State*, 187 Ariz. 214, 222 n. 5, 928 P.2d 638, 646 n. 5 (App. 1995); Black's Law Dictionary 350 (8th ed.2004). Nothing in the statute suggests that the seller's choice transforms rescission

from an equitable remedy to a nondiscretionary one.

¶ 34 The references to juries in § 44–2003(D) and (J) do not change our conclusion. Section 44–2003 merely provides guidance for the conduct of a jury trial; it does not prescribe a jury trial in all cases. *Cf. Newman*, 219 Ariz. at 272, ¶¶ 46–47, 196 P.3d at 875 (statute providing that "court or jury" could order punitive damages did not create jury trial right in probate case, but merely acknowledged that claim consolidation may allow jury to hear claims for which there is no independent jury trial right). The superior court correctly determined that it, not the jury, was responsible for deciding whether the rescission remedy was available to Plaintiffs.[5]

**B. Equitable Defenses Apply to Rescission Under A.R.S. § 44–2002.**

¶ 35 The superior court ruled that rescission was improper because Plaintiffs had "unreasonably delayed in rescinding their UHC stock sales to defendant Clinton Underhill, and ... waived their right to rescission by ratifying their UHC stock sales transaction with defendant Clinton Underhill." Plaintiffs contend that the court erred because equitable defenses do not apply when rescission is sought under § 44–2002.

¶ 36 We concluded above that rescission is governed by equitable principles. Among these principles is the requirement that rescission be offered (with or without actual surrender of property) "within a reasonable time under the existing circumstances." *Mahurin*, 95 Ariz. at 340, 390 P.2d at 580. "Conversely, one who has knowledge of fraud as grounds for rescission, but continues to treat the property as his own is deemed to have waived the fraud, at least for purposes of rescission." *Smith v. Hurley*, 121 Ariz. 164, 169, 589 P.2d 38, 43 (App.1978). We have therefore held that when a defrauded *purchaser* of securities brings an action for rescissonary damages under § 44–2001, "the general view is that tender to the issuer

---

5. We note that our holding is in harmony with federal cases suggesting that there is no right to jury trial for rescission sought under the Securities Act of 1933 and the Securities Exchange Act of 1934. *See Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1019 n. 4 (2d Cir.1989); *Arber v. Essex Wire Corp.*, 490 F.2d 414, 422–23 (6th Cir.1974).

or to the court at the commencement of the action is sufficient" because such tender shows that the purchaser did not "delay[ ] in electing the remedy of rescission to see if avoidance or affirmance would be more profitable." *Rose v. Dobras*, 128 Ariz. 209, 214, 624 P.2d 887, 892 (App.1981).

¶ 37 Plaintiffs correctly note that the legislature has directed a liberal construction of the Arizona Securities Act to protect the public interest. The legislature stated:

> The intent and purpose of this Act is for the protection of the public, the preservation of fair and equitable business practices, the suppression of fraudulent or deceptive practices in the sale or purchase of securities, and the prosecution of persons engaged in fraudulent or deceptive practices in the sale or purchase of securities. This Act shall not be given a narrow or restricted interpretation or construction, but shall be liberally construed as a remedial measure in order not to defeat the purpose thereof.

1951 Ariz. Sess. Laws, ch. 18, § 20 (1st Reg. Sess.).

¶ 38 Section 44–2002 provides for a civil remedy. *See Bullard v. Garvin*, 1 Ariz.App. 249, 251, 401 P.2d 417, 419 (1965) ("While there are penal provisions in … [§ 44–2001], it seems clear that the … statute … is one providing for a civil remedy, and the court sees no need to apply rules of construction pertaining to penal statutes…."). But a liberal construction of the remedy does not necessarily mean a generous one. *See Sell v. Gama*, 231 Ariz. 323, 328, ¶ 23, 295 P.3d 421, 426 (2013) (construing § 44–2001). To give the statute a liberal construction, there must first be ambiguous language that requires construction. Nothing in § 44–2002 provides even impliedly that rescission for securities fraud is exempt from equitable defenses, and we have no authority to add to the statute what the legislature did not expressly include. *See id.; Pleak*, 207 Ariz. at 422, ¶ 12, 87 P.3d at 835.

¶ 39 We acknowledge that courts in other jurisdictions have construed their securities laws to eliminate equitable defenses in private actions. For example, the Missouri Supreme Court, construing a Missouri state statute substantially similar to A.R.S. § 44–2001, held that the statute was penal and that the application of estoppel would defeat its protective purpose. *Covert v. Cross*, 331 S.W.2d 576, 585 (Mo.1960); *see also Gowdy v. Richter*, 20 Ill.App.3d 514, 314 N.E.2d 549, 557 (1974) (holding that penal nature of the Illinois statute prevented *in pari delicto* and estoppel defenses). We are not persuaded by this approach. As used in this context, a penal statute is one that allows for a minimum recovery even when the plaintiff has suffered no actual damages. *Gulf Homes, Inc. v. Gonzales*, 139 Ariz. 1, 6, 676 P.2d 635, 640 (App.1983), *vacated in part on other grounds by* 138 Ariz. 596, 676 P.2d 628 (1984). Section 44–2002 is not a penal statute.

¶ 40 We are also not persuaded by other courts' reliance on the principle of *expressio unius est exclusio alterius*. In *Go2Net, Inc. v. FreeYellow.com, Inc.*, the Washington Supreme Court held that waiver and estoppel were unavailable because the Securities Act of Washington was intended to deter wrongdoing and because the statutes therein specifically set forth some defenses but did not mention estoppel and waiver. 158 Wash.2d 247, 143 P.3d 590, 593, ¶ 11 (2006). The court pointed to statutes providing a reasonable care defense to control-persons of liable entities, imposing a statute of limitations for private civil actions, eliminating liability for defendants who made written rescission offers, providing a good-faith defense, and voiding contract provisions purporting to waive compliance with the Act. *Id.; see also Martin v. Steubner*, 485 F.Supp. 88, 101 (S.D.Ohio 1979) (holding that two-year limitations period under Ohio securities act "indicate[d] … that the legislature considered the issue of a purchaser resting on its rights and chose to resolve that issue by the use of a two-year limitation rather than the equitable balancing inherent in a laches analysis"). The Arizona Securities Act similarly provides some express defenses and limits to a private action. *See* A.R.S. §§ 44–1998(A) (general good-faith defense), 44–1999 (good-faith defense for control-persons), 44–2000 (compliance with Act cannot be waived), 44–2001(B) (good-faith defense for fraudulent sellers),

44–2002(B) (good-faith defense for fraudulent purchasers), 44–2004(B) (two-year limitations period for securities fraud actions). But we cannot say that these specific provisions regarding defenses to *liability* demonstrate legislative intent to exclude other defenses to the *remedies* provided by § 44–2002(A), under the principle of *expressio unius* or otherwise. We therefore hold that the superior court did not err by considering equitable defenses to rescission.

### C. The Superior Court Abused Its Discretion by Denying Rescission Based on Its Finding of Prejudice.

¶ 41 In support of its ruling denying rescission, the superior court found that Plaintiffs had delayed seeking rescission for more than two years, that Clinton had not induced the delay, that Plaintiffs were not unsophisticated parties, that Plaintiffs had not shown an inability to rescind earlier, and that Clinton and UHC were prejudiced by the delay.

¶ 42 The court's factor-based analysis was methodologically appropriate. "What is a reasonable time [for offering rescission] is a question of fact for the trier of fact unless the facts are such that only one inference could be derived therefrom in which case it would become a question of law." *Mahurin*, 95 Ariz. at 340, 390 P.2d at 580. The inquiry is fact-dependent and implicates multiple considerations, including: when the party seeking rescission first made a "clear and unambiguous" rescission offer, *id.* at 340, 390 P.2d at 580–81; whether the party seeking rescission delayed in demanding rescission based on the other party's reasonable assurances, *see Preston Motor Co. v. Palomares*, 133 Ariz. 245, 249, 650 P.2d 1227, 1231 (App.1982); whether it is possible for the property sought to be returned by the defendant, *see Jerger v. Rubin*, 106 Ariz. 114, 117, 471 P.2d 726, 729 (1970); whether the party seeking rescission had actual or constructive knowledge of the fraud yet manifested to the other party an intention to affirm the transaction, *Mackey v. Philzona*

*Petroleum Co.*, 93 Ariz. 87, 91, 378 P.2d 906, 908 (1963); and whether there is evidence that the party seeking rescission deliberately delayed in requesting rescission to gain an unfair advantage, *see Rose*, 128 Ariz. at 214, 624 P.2d at 892.

¶ 43 But while the superior court looked to appropriate factors, it made two errors. First, the court wrongly defined the delay period as the time between the July 2006 stock sale and the December 2008 letter offering full rescission. This was error because the proper starting point for the calculation was not the date of the sale, but the date that Plaintiffs knew of the alleged fraud.[6]

¶ 44 The more significant error lies in the court's conception of prejudice caused by the delay. The court found that Plaintiffs' delay in seeking full rescission prejudiced Clinton and UHC by "jeopardizing [Clinton's] controlling interest" and placing UHC's "management and control ... under a cloud of uncertainty." As an initial matter, we note that this finding conflicted with the court's earlier finding that Clinton was not entitled to judgment as a matter of law because he "has not alleged, nor has he proved, that he suffered prejudice during the subject ... period of delay." But the earlier finding did not weigh all the evidence and was not law of the case. *See Zimmerman v. Shakman*, 204 Ariz. 231, 236, ¶ 15, 62 P.3d 976, 981 (App.2003); *Cano v. Neill*, 12 Ariz. App. 562, 570, 473 P.2d 487, 495 (1970).

¶ 45 The later finding of prejudice was, however, based on a misperception of the relevant inquiry. The court found that there was prejudice because Clinton's control of UHC was made uncertain by the prospect of rescission. But this uncertainty flowed not from Plaintiffs' purported delay in demanding rescission, but from their timely pursuit of their fraud claims. If Plaintiffs proved fraud (as they did), then the consequent loss of shares would not have "prejudiced" Clin-

---

**6.** Though Plaintiffs contend that the court erred by assigning an incorrect ending point for the calculation, we find no abuse of discretion regarding that date. To be sure, a reasonable finder of fact could find that Plaintiffs' earlier requests for partial rescission were sufficient. But we cannot say that the court abused its discretion by finding that the December 2008 letter was the first time that rescission was clearly and completely demanded.

ton—it would have remedied the wrong. A deleterious result is not necessarily the same as a "prejudicial" result.

¶ 46 The timing of the demand was also factually irrelevant to the cloud on Clinton's control. Had rescission been demanded earlier, the same uncertainty regarding control would have existed until the end of the case. A quicker demand could only have clarified the question of control had Clinton acceded to it—but the effect would have been to dilute Clinton's interest, not assure his control. And Clinton never suggested that he would have responded favorably to a more prompt demand for rescission. We conclude that the court's findings did not support the conclusion that Clinton was prejudiced. Plaintiffs are therefore entitled to seek rescission on remand.[7]

## CONCLUSION

¶ 47 We reverse and remand for new trial on the merits of Plaintiffs' claims against James and on the relief required to make them whole with respect to the jury verdicts against Clinton. On remand, Plaintiffs may seek rescission as well as damages on the verdicts against Clinton, but the court may consider equitable defenses to rescission.

¶ 48 The appellees request their attorney's fees and costs on appeal under A.R.S. § 12–341.01. We deny the appellees' request because they are not the prevailing parties. Plaintiffs have not requested attorney's fees, but they are entitled to their costs under A.R.S. § 12–341, subject to their compliance with ARCAP 21.

---

7. Should Clinton show on remand that he reasonably relied to his detriment on Plaintiffs' delay in seeking rescission, the court may then consider the issue of prejudice.